**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HOWARD L. BALDWIN; KAREN
BALDWIN,
             *Plaintiffs-Appellees*,

v.

UNITED STATES OF AMERICA,
             *Defendant-Appellant.*

Nos. 17-55115
        17-55354

D.C. No.
2:15-cv-06004-
RGK-AGR

OPINION

Appeals from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted January 8, 2019
Pasadena, California

Filed April 16, 2019

Before: Susan P. Graber and Paul J. Watford, Circuit
Judges, and Jack Zouhary,[*] District Judge.

Opinion by Judge Watford

---

[*] The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

## SUMMARY[**]

**Tax**

The panel reversed the district court's judgment, after a bench trial, in favor of taxpayers in their tax refund action, and remanded with instructions to dismiss because taxpayers had not filed a timely claim for a refund with the Internal Revenue Service (IRS).

As a prerequisite to bringing their refund action, taxpayers first had to file a timely amended return, claiming the refund, with the IRS. In this case, the IRS did not timely receive such a return. The district court credited the testimony of two employees of taxpayers to find that, under the common-law mailbox rule, the amended return had been timely filed.

The common-law mailbox rule provides that proof of proper mailing—including by testimonial or circumstantial evidence—gives rise to a rebuttable presumption that the document was physically delivered to the addressee in the time such a mailing would ordinarily take to arrive. In contrast, Internal Revenue Code § 7502 allows documents to be deemed timely filed only if they are actually delivered to the IRS and postmarked on or before the deadline. For documents sent by registered mail, § 7502 provides a presumption that the document was delivered even if the IRS claims not to have received it, so long as the taxpayer produces the registration as proof. Under Treasury Regulation § 301.7502-1(e)(2), IRC § 7502 provides the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

exclusive means to prove delivery, rendering the common-law mailbox rule unavailable.

The panel accorded *Chevron* deference to Treasury Regulation § 301.7502-1(e)(2) as a permissible construction of IRC § 7502. Because that regulation applies to this case, the panel reversed the district court's judgment and remanded with instructions to dismiss, and reversed the award of litigation costs to taxpayers because they were no longer the prevailing party.

---

## COUNSEL

Nathaniel S. Pollock (argued), Joan I. Oppenheimer, and Gilbert S. Rothenberg, Attorneys; Richard E. Zuckerman, Principal Deputy Assistant Attorney General; Tax Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellant.

Robert Wayne Keaster (argued), Chamberlin & Keaster LLP, Encino, California, for Plaintiffs-Appellees.

---

## OPINION

WATFORD, Circuit Judge:

Howard and Karen Baldwin filed this action to obtain a refund of taxes they paid for the 2005 tax year. After a bench trial, the district court entered judgment in their favor, awarding them a refund of roughly $167,000 plus litigation costs of $25,000. We conclude that the district court lacked the authority to hear this suit. As a prerequisite to bringing this action, the Baldwins first had to file a timely claim for a

refund with the Internal Revenue Service (IRS).  They filed their claim too late.  As a result, we must reverse the district court's judgment and remand with instructions to dismiss the case.

I

Because the merits of the underlying tax dispute are irrelevant to our disposition, we provide only a brief summary of the facts.  The Baldwins' 2007 tax return reported a net operating loss of approximately $2.5 million from their movie production business.  They wanted to carry that loss back to the 2005 tax year in order to offset their 2005 tax liability.  Based on that carryback, the Baldwins prepared an amended 2005 tax return claiming entitlement to a refund of approximately $167,000.

To obtain a refund, the Baldwins were required to file their amended 2005 tax return by October 15, 2011—three years from the extended due date for their 2007 tax return. *See* 26 U.S.C. § 6511(b)(1), (d)(2)(A).  The Baldwins assert that they sent their amended 2005 tax return to the IRS by U.S. mail in June 2011, well before the October 15th deadline.  But the IRS never received that return, or any other return postmarked by the October 15, 2011, deadline.  The IRS did eventually receive an amended 2005 return from the Baldwins in July 2013, but it was postmarked after the statutory deadline had passed.  The IRS accordingly denied the Baldwins' refund claim as untimely.

The Baldwins then brought this action against the United States in the district court.  Although the doctrine of sovereign immunity would ordinarily bar such a suit, the United States has waived its immunity from suit by allowing a taxpayer to file a civil action to recover "any internal-revenue tax alleged to have been erroneously or illegally

assessed or collected." 28 U.S.C. § 1346(a)(1). Under the Internal Revenue Code (IRC), though, no such action may be maintained in any court "until a claim for refund or credit has been duly filed" with the IRS, in accordance with IRS regulations. 26 U.S.C. § 7422(a); *see United States v. Dalm*, 494 U.S. 596, 609 (1990). To be "duly filed," a claim for refund must be filed within the time limit set by law. *Yuen v. United States*, 825 F.2d 244, 245 (9th Cir. 1987) (per curiam). Here, as noted above, the Baldwins had to file their refund claim (*i.e.*, their amended 2005 tax return) by October 15, 2011.

At this point, before proceeding further, a detour is necessary to explain when a document, such as a tax return, is deemed "filed" with the IRS.

Before 1954, the law treated tax documents as timely filed only if they were physically delivered to the IRS by the applicable deadline. *Anderson v. United States*, 966 F.2d 487, 490 (9th Cir. 1992); *see United States v. Lombardo*, 241 U.S. 73, 76 (1916). This physical-delivery rule left taxpayers who mailed their documents vulnerable to the vagaries of the postal service; documents could be delayed or not delivered at all through no fault of the taxpayer. To mitigate the harshness of the physical-delivery rule, some courts responded by applying the common-law mailbox rule. *See, e.g.*, *Detroit Automotive Products Corp. v. Commissioner of Internal Revenue*, 203 F.2d 785, 785–86 (6th Cir. 1953) (per curiam); *Arkansas Motor Coaches, Ltd. v. Commissioner of Internal Revenue*, 198 F.2d 189, 191 (8th Cir. 1952). Under the common-law mailbox rule, proof of proper mailing—including by testimonial or circumstantial evidence—gives rise to a rebuttable presumption that the document was physically delivered to the addressee in the time such a mailing would ordinarily take to arrive.

*Philadelphia Marine Trade Association v. Commissioner of Internal Revenue*, 523 F.3d 140, 147 (3d Cir. 2008); *Anderson*, 966 F.2d at 491.

In 1954, Congress addressed some of the problems caused by the physical-delivery rule by enacting IRC § 7502. Section 7502(a)(1) carves out an exception to the physical-delivery rule for tax documents sent and delivered by U.S. mail. It provides that if a document is received by the IRS after the applicable deadline, it will nonetheless be deemed to have been delivered on the date that the document is postmarked:

> If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

26 U.S.C. § 7502(a)(1). This exception means that a document will be deemed timely filed so long as two things are true: (1) the document is *actually delivered* to the IRS, even if after the deadline; and (2) the document is postmarked on or before the deadline. If the document is

never delivered at all—say, because it gets lost in the mail—the exception by its terms does not apply. *Miller v. United States*, 784 F.2d 728, 730 (6th Cir. 1986) (per curiam).

To protect against a failure of delivery, some taxpayers choose to send documents by registered mail. Section 7502(c)(1) provides an exception to the physical-delivery rule applicable to documents sent in that manner. It provides that when a document is sent by registered mail, the registration will serve as prima facie evidence that the document was delivered, and the date of registration will be treated as the postmark date:

> For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States registered mail—
>
> **(A)** such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
>
> **(B)** the date of registration shall be deemed the postmark date.

26 U.S.C. § 7502(c)(1). Subsection (B) provides, in effect, that the same exception to the physical-delivery rule afforded under § 7502(a)(1) for documents sent by regular mail extends to documents sent by registered mail, with the registration serving the same function as the postmark. Subsection (A), however, goes further. It provides a presumption that a document sent by registered mail was

delivered even if the IRS claims not to have received it, so long as the taxpayer produces the registration as proof.[1]

In the decades following the enactment of IRC § 7502, the courts of appeals reached conflicting decisions as to what effect, if any, the statute had on application of the common-law mailbox rule. On one side of the split, some courts held that § 7502 supplies the exclusive exceptions to the physical-delivery rule, thereby displacing the common-law mailbox rule altogether. *See Miller*, 784 F.2d at 730–31; *Deutsch v. Commissioner of Internal Revenue*, 599 F.2d 44, 46 (2d Cir. 1979). These courts noted that § 7502 evinces a preference "for an easily applied, objective standard"—a preference incompatible with the common-law mailbox rule, which tolerates testimonial and circumstantial evidence to prove when a document was mailed (and thus presumptively delivered). *Deutsch*, 599 F.2d at 46.

On the other side of the split, some courts reasoned that because § 7502 was meant to mitigate the harshness of the physical-delivery rule, it is best read as providing a safe harbor, not as limiting resort to alternative exceptions to the physical-delivery rule. *See Sorrentino v. IRS*, 383 F.3d 1187, 1193 (10th Cir. 2004); *Estate of Wood v. Commissioner of Internal Revenue*, 909 F.2d 1155, 1161 (8th Cir. 1990). Courts on this side of the split relied on the principle that statutes should not be read as displacing the common law unless Congress clearly so intended, while noting that Congress did not clearly state in § 7502 that it

---

[1] Although not at issue here, IRC § 7502(c)(2) and (f)(3) authorize the Treasury Secretary to establish, by regulation, equivalent exceptions to the physical-delivery rule for documents sent by certified mail, electronic filing, and private delivery services. 26 U.S.C. § 7502(c)(2), (f)(3).

intended to displace the common-law mailbox rule. *See Estate of Wood*, 909 F.2d at 1160. Our circuit adopted this latter line of reasoning. In *Anderson v. United States*, 966 F.2d 487 (9th Cir. 1992), we "decline[d] to read section 7502 as carving out exclusive exceptions to the old common law physical delivery rule." *Id.* at 491.

This circuit split left the law in an undesirable state, as it allowed similarly situated taxpayers to be treated differently depending on where they lived. In August 2011, the Treasury Department sought to resolve the split by promulgating an amended version of Treasury Regulation § 301.7502-1(e). The amended regulation interprets § 7502 as creating the exclusive exceptions to the physical-delivery rule:

> Other than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated [private delivery service], are the *exclusive means* to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. *No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.*

26 C.F.R. § 301.7502-1(e)(2)(i) (emphasis added). The regulation makes clear that, unless a taxpayer has direct proof that a document was actually delivered to the IRS, IRC § 7502 provides the exclusive means to prove delivery. In other words, recourse to the common-law mailbox rule is no longer available.

With that background in mind, we can now return to the facts of this case.  In the district court, the Baldwins did not dispute that the amended 2005 tax return they claim to have mailed in June 2011 was never received by the IRS.  The Baldwins therefore sought to rely on the common-law mailbox rule to establish that the document was presumptively delivered to the IRS in June 2011, shortly after they mailed it.  They offered the testimony of two of their employees, who had been tasked with mailing the document on the Baldwins' behalf.  The employees explained that they deposited the amended 2005 return in the mail at the post office in Hartford, Connecticut, on June 21, 2011.  Under the common-law mailbox rule, that testimony, if credited by the court, would give rise to a rebuttable presumption that the amended return was delivered to the IRS well before the October 15, 2011, deadline.

The district court credited the testimony of the Baldwins' employees and found, on the basis of the common-law mailbox rule, that the Baldwins' claim for a refund had been timely filed.  The court rejected the government's argument that Treasury Regulation § 301.7502-1(e)(2) barred application of the common-law mailbox rule.  The court viewed IRC § 7502 as unambiguously supplementing, rather than supplanting, the common-law mailbox rule, thus leaving no room for the agency to adopt the construction of the statute reflected in Treasury Regulation § 301.7502-1(e)(2).  Whether the district court correctly declared that portion of the Treasury Regulation invalid is the principal focus of the government's appeal.

## II

In deciding whether Treasury Regulation § 301.7502-1(e)(2) is valid, we employ the familiar two-step analysis under *Chevron U.S.A. Inc. v. Natural Resources Defense*

*Council, Inc.*, 467 U.S. 837 (1984). We ask first whether "Congress has directly spoken to the precise question at issue." *Id.* at 842. If it has, Congress' resolution of the issue controls and the agency is not free to adopt an interpretation at odds with the plain language of the statute. But if the statute is silent or ambiguous on the question at hand, we then ask whether the agency's interpretation is "based on a permissible construction of the statute." *Id.* at 843.

At step one of the analysis, we conclude that IRC § 7502 is silent as to whether the statute displaces the common-law mailbox rule. In particular, with respect to the question relevant here, the statute does not address whether a taxpayer who sends a document by regular mail can rely on the common-law mailbox rule to establish a presumption of delivery when the IRS claims not to have received the document. The statute does afford a presumption of delivery when a taxpayer sends a document by *registered* mail, 26 U.S.C. § 7502(c)(1)(A), and it authorizes the creation of similar rules for certified mail, electronic filing, and private delivery services. § 7502(c)(2), (f)(3). But as to documents sent by regular mail, the statute is conspicuously silent.[2]

At step two of the *Chevron* analysis, the remaining question is whether Treasury Regulation § 301.7502-1(e)(2) is based on a permissible construction of the statute. We conclude that it is. As reflected by the circuit split that developed on this issue, Congress' enactment of IRC § 7502 could reasonably be construed in one of two ways: as intended merely to supplement the common-law mailbox

---

[2] The statute is also silent as to whether any evidence other than the objective evidence described in the statute—the registration for registered mail, and equivalents for certified mail, electronic filing, and private delivery service—may raise a presumption of delivery.

rule, or to supplant it altogether.  The Treasury Department chose the latter construction by interpreting IRC § 7502 to provide the sole means by which taxpayers may prove timely delivery in the absence of direct proof of actual delivery. That construction of the statute is reasonable in light of the principle that "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (alteration omitted); *see also Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017).  Given that the purpose of enacting IRC § 7502 was to provide exceptions to the physical-delivery rule, it is reasonable to conclude that "Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000).

In arguing that the Treasury Department unreasonably construed IRC § 7502 as having displaced the common-law mailbox rule, the Baldwins invoke a different principle of statutory interpretation, which provides that "the common law . . . ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose." *Norfolk Redevelopment and Housing Authority v. Chesapeake & Potomac Telephone Co.*, 464 U.S. 30, 35 (1983) (alteration and internal quotation marks omitted).  But the mere fact that dueling principles of statutory interpretation support opposing constructions of a statute does not prove, without more, that the agency's interpretation is unreasonable.  The question remains whether the agency has adopted a permissible construction of the statute, taking into account all of the interpretive tools available.  As is true in this case, an agency's construction can be reasonable even if another, equally permissible construction of the statute could also be upheld.

Finally, our prior interpretation of IRC § 7502 in *Anderson* does not bar our decision to defer to the agency's conflicting, but nonetheless reasonable, construction of the statute. As noted above, before the relevant amendment of Treasury Regulation § 301.7502-1(e), we "decline[d] to read section 7502 as carving out exclusive exceptions to the old common law physical delivery rule." *Anderson*, 966 F.2d at 491. But "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 982 (2005). We did not hold in *Anderson* that our interpretation of the statute was the *only* reasonable interpretation. In fact, our analysis made clear that our decision filled a statutory gap. Under *Brand X*, the Treasury Department was free to fill that gap by adopting its own reasonable interpretation of the governing statute.

## III

The Baldwins contend that even if Treasury Regulation § 301.7502-1(e)(2) is valid, it does not apply in this case. They offer two arguments to that end, both of which we reject.

First, the Baldwins argue that IRC § 7502 and Treasury Regulation § 301.7502-1(e)(2) apply only when a tax document was sent before, but received after, the applicable due date. In their view, these provisions do not apply when, as here, a tax document was never received at all. The Baldwins thus contend that even if Treasury Regulation § 301.7502-1(e)(2) prohibits recourse to the common-law mailbox rule, that prohibition does not apply to them because they used the mailbox rule not to prove that a late-received

document was mailed in time, but instead to prove that a document that the IRS apparently never received was in fact delivered.

The Baldwins are mistaken. To be sure, § 7502 addresses situations in which tax documents are mailed before, but not received until after, the due date. Subsection (a)(1) provides that in such instances the document will be deemed timely filed so long as it was postmarked before the due date. 26 U.S.C. § 7502(a)(1). But § 7502 also addresses situations in which the IRS claims not to have received a tax document at all. Subsection (c)(1)(A) provides that, for documents sent by registered mail, the registration will be treated as "prima facie evidence that the [document] was delivered." § 7502(c)(1)(A). That provision can apply only when the IRS claims not to have received a document. The Baldwins are therefore wrong in contending that IRC § 7502 and Treasury Regulation § 301.7502-1(e)(2)—which interprets the statute to prohibit recourse to the common-law mailbox rule—do not apply to situations like theirs in which a document was never delivered to the IRS.

Second, the Baldwins argue that Treasury Regulation § 301.7502-1(e)(2) does not apply in this case because it was promulgated in August 2011, two months after they allegedly mailed their amended 2005 return in June 2011. This argument also fails. *See Maine Medical Center v. United States*, 675 F.3d 110, 118 n.14 (1st Cir. 2012) (rejecting identical argument). The regulation expressly provides that "Section 301.7502-1(e)(2) will apply to all documents mailed after September 21, 2004," the date that the current text of the regulation was proposed. 26 C.F.R. § 301.7502-1(g)(4); Timely Mailed Treated as Timely Filed, 69 Fed. Reg. 56,377-01 (Sept. 21, 2004). That retroactivity provision complies with IRC § 7805(b), which authorizes

the Treasury Secretary to make regulations retroactively applicable as far back as the date of their proposal. 26 U.S.C. § 7805(b)(1)(B); *see Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988). Our prior decision in *Anderson* is irrelevant to the issue of retroactivity, as § 7805(b) does not contain an exception barring the retroactive application of a valid regulation in judicial circuits where the regulation contravenes a prior circuit decision.

\*          \*          \*

Because Treasury Regulation § 301.7502-1(e)(2) is valid and applicable in this case, and because timely filing is a mandatory requirement for maintaining tax refund suits, *see* 26 U.S.C. § 7422(a), we reverse the judgment below and remand with instructions to dismiss this case. As the Baldwins are no longer prevailing parties, we also reverse the award of litigation costs.

**REVERSED and REMANDED.**