**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT
_____

**BAP NO. RI 19-056**
_____

**Bankruptcy Case No. 15-10162-DF**
**Adversary Proceeding No. 16-01001-DF**
_____

**JASON DANIEL BOUDREAU,**
**Debtor.**
_____

**JASON BOUDREAU,**
**Plaintiff-Appellant,**
**v.**

**UNITED STATES OF AMERICA,**
**Defendant-Appellee.**
_____

**Appeal from the United States Bankruptcy Court**
**for the District of Rhode Island**
**(Hon. Diane Finkle, United States Bankruptcy Judge)**
_____

**Before**
**Lamoutte, Fagone, and Katz,**
**United States Bankruptcy Appellate Panel Judges.**
_____

**Jason Boudreau, Pro Se, on brief for Appellant.**
**James M. Strandjord, Esq., on brief for Appellee.**
_____

**December 11, 2020**
_____

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

The bankruptcy court entered a judgment determining that certain tax debts owed by Jason Boudreau (the "Debtor") were excepted from discharge. The Debtor appeals from that judgment. For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

### I. The Bankruptcy Filing

The Debtor, who is incarcerated at a prison in Rhode Island, filed a chapter 7 petition in 2015. On his schedules, he listed the Internal Revenue Service ("IRS") as the holder of priority claims for unpaid federal income taxes for 2004, 2007, 2009, 2010, and 2011. In due course, the chapter 7 trustee filed a report indicating there were no assets available for distribution to creditors. A few months later, the Debtor received his discharge and the case was closed.

### II. The Adversary Proceeding

#### A. The Complaint

Almost a year later, the Debtor commenced an adversary proceeding against the IRS and two others. In his second amended complaint, the Debtor sought a determination as to the dischargeability of his federal income tax debts for the years 2008 through 2011 (the "Tax Years"). The Debtor alleged that, in 2012 or 2013 while he was incarcerated, he filed tax returns for the Tax Years, and the IRS had not timely assessed taxes against him for those years. Accordingly, the Debtor sought: (1) a full or partial discharge of his tax debt for the Tax Years; (2) a determination of *when* he filed his income tax returns for the Tax Years and whether any

2

assessment for the Tax Years was time-barred; and (3) a determination as to *the amount* of his federal tax liabilities for the Tax Years.[1]

**B.        Order Dismissing Complaint in Part**

The IRS moved to dismiss each of the Debtor's claims, asserting, among other things, that the tax debts for the Tax Years were excepted from discharge as a matter of law under either § 523(a)(1)(A) or (B).  The IRS also contended the bankruptcy court lacked subject matter jurisdiction under 28 U.S.C. § 1334 as there was "no bankruptcy purpose" for a determination as to the amount or legality of the Debtor's tax debts.  Alternatively, the IRS urged the bankruptcy court to abstain from deciding the matter under 28 U.S.C. § 1334(c).  Following a hearing in 2017, the bankruptcy court granted the IRS's motion as to all claims asserted against the IRS, except for the first claim relating to dischargeability.[2]

The IRS then answered the complaint.  It denied that the returns for the Tax Years had been filed in 2012 or 2013.  Instead, it maintained that, because the returns for those years were, in fact, first received by the IRS in 2017, the returns were filed in 2017.  As a result, the post-petition assessment of taxes in January 2017 was, according to the IRS, timely.

**C.        Cross-Motions for Summary Judgment**

The IRS and the Debtor filed cross-motions for summary judgment, arguing they were entitled to judgment as a matter of law as to the dischargeability of the Debtor's federal tax liabilities for the Tax Years.  They agreed that the only dispute between them was regarding *when* the returns for the Tax Years were filed.  The IRS maintained that the returns for the Tax

---

[1]  The Debtor also sought determinations that his state tax and student loan debts were dischargeable.  As he does not challenge the court's rulings as to those debts, they are not at issue in this appeal.

[2]  Although the docket reflects that the bankruptcy court issued a bench ruling at the hearing on the motion to dismiss, neither party included a hearing transcript in the appellate record.  As a result, we are unable to discern the bankruptcy court's rulings regarding subject matter jurisdiction or abstention.

Years were not filed until January 4, 2017, which triggered its post-petition assessment of taxes. The Debtor, on the other hand, contended he initially filed tax returns for the Tax Years in 2012 and that the January 2017 returns were merely replications of the original returns. The only evidence the Debtor submitted regarding the filing of the returns was his own sworn declaration attesting that he had placed the tax returns for the Tax Years in the prison mailbox in 2012.

The parties agreed that the filing date for the tax returns was dispositive as to the dispute between them. If the tax returns for the Tax Years were filed in 2012, as the Debtor asserted, then he would have no tax liability for those years because the IRS did not assess the taxes against him within three years of filing the returns as required by § 6501(a) of the Internal Revenue Code ("I.R.C."). See 26 U.S.C. § 6501(a) (providing that, with exceptions not applicable here, federal income taxes must be assessed within three years of the filing of a tax return). On the other hand, if the Debtor did not file the tax returns until 2017, as the IRS claimed, then the tax assessments in 2017 would have been timely, see 26 U.S.C. § 6501(c)(3) (providing that limitations period for assessing federal income taxes does not begin to run until a tax return is filed), and the resulting tax liability would be nondischargeable under either § 523(a)(1)(A) or (B).

### D.     The IRS Judgment

On August 9, 2018, the court issued a decision determining that the Debtor's federal tax debts for the Tax Years were excepted from discharge and entered judgment in favor of the IRS (the "IRS Judgment"). See Boudreau v. Dep't of Treasury (In re Boudreau), 587 B.R. 799 (Bankr. D.R.I. 2018). The bankruptcy court agreed that the case hinged entirely on the date the tax returns for the Tax Years were filed and concluded that the question presented a "purely legal issue" which could be decided on summary judgment. Id. at 801. It then made the following

statement: "The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334, and DRI LR Gen 109(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (I), and (O)." Id. at 802.

After considering the relevant statutes, regulations, and case law, the bankruptcy court concluded that: (1) the IRS had met its initial burden of proof by submitting documentary evidence sufficient to show that the returns were not filed in 2012; (2) there was no evidence the returns were actually delivered to the IRS in 2012 or that the Debtor sent the returns by registered or certified mail as required by I.R.C. § 7502; (3) even if the common-law mailbox rule could be invoked, the Debtor did not provide any evidence such as a postmark, proof of actual delivery, copies of the dated and signed tax returns allegedly filed, or witness testimony to corroborate the claims in his declaration; and, similarly, (4) even if the prison mailbox rule applied, the Debtor was required to produce corroborating evidence such as a registered mail receipt or a prison log reflecting the mailing. As a result, the bankruptcy court concluded:

> [T]he IRS has met its burden of proving by a preponderance of the evidence that Mr. Boudreau did not file tax returns for the Tax Years in 2012. Based on the legal standards for review of summary judgment motions, under the circumstances and evidence presented, there is no genuine dispute of material fact. A rational factfinder could resolve the issue of whether Mr. Boudreau filed the tax returns in 2012 only in favor of the IRS, and accordingly, the IRS is entitled to judgment as a matter of law. Conversely, Mr. Boudreau has not satisfied his burden to rebut the IRS's evidence, and he is not entitled to summary judgment in his favor. The IRS's motion for summary judgment is GRANTED, and Mr. Boudreau's motion for summary judgment is DENIED.

Id. at 809.

### E. The Final Judgment in the Adversary Proceeding

After further proceedings, the bankruptcy court entered judgments resolving the Debtor's remaining claims against the other defendants. The last such judgment was entered in October 2019 (the "Final Judgment"), thereby concluding the adversary proceeding.

5

**F.      The Present Appeal**

The Debtor filed a notice of appeal with respect to the Final Judgment.  He subsequently clarified, in a "Corrected Notice of Appeal," that he was challenging only the IRS Judgment.  On appeal, the parties essentially reassert the same arguments they presented in the summary judgment proceedings.  The IRS also argues, as it did in its motion to dismiss below, that the bankruptcy court lacked subject matter jurisdiction to determine the tax dispute between the Debtor and the IRS.

## APPELLATE JURISDICTION

We have jurisdiction to hear appeals from final orders of the bankruptcy court.  28 U.S.C. § 158(a), (c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015).  Although the IRS Judgment was interlocutory when entered, it later merged into the Final Judgment.  See Segarra Miranda v. Banco Popular de P.R. (In re Rivera Mercado), 599 B.R. 406, 416 (B.A.P. 1st Cir. 2019) (citation omitted) (providing that, under the merger rule, "prior interlocutory orders merge with the final judgment in a case and may be reviewed on appeal from the final order").  Moreover, "an order granting summary judgment is a final order where no counts against any defendants remain."  Hann v. Educ. Credit Mgmt. Corp. (In re Hann), 476 B.R. 344, 353 (B.A.P. 1st Cir. 2012) (citation omitted) (internal quotation marks omitted), aff'd, 711 F.3d 235 (1st Cir. 2013).  As such, we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

Appellate courts review an order granting summary judgment de novo.  See Bates v. CitiMortgage, Inc., 844 F.3d 300, 303 (1st Cir. 2016) (citation omitted); Hannon v. ABCD Holdings, LLC (In re Hannon), 839 F.3d 63, 69 (1st Cir. 2016) (citation omitted).  They also

6

"review whether the lower court had subject matter jurisdiction de novo." Sanger v. Ahn (In re Ahn), 804 F. App'x 541, 544 (9th Cir. 2020) (citation omitted); see also Concerto Software, Inc. v. Vitaquest Int'l, Inc., 290 B.R. 448, 450 (D. Me. 2003) ("Subject matter jurisdiction is a legal issue, and, thus, is reviewed de novo.") (citation omitted).

## DISCUSSION

### I.       Applicable Standards

#### A.       Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7056); see also Soto-Rios v. Banco Popular de P.R., 662 F.3d 112, 115 (1st Cir. 2011) (citations omitted). "[A]n issue is 'genuine' if the record permits a rational factfinder to resolve that issue in favor of either party." Jarvis v. Vill. Gun Shop, Inc., 805 F.3d 1, 7 (1st Cir. 2015) (citing Borges ex el. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010)). "[A] fact is 'material' 'if its existence or nonexistence has the potential to change the outcome of the suit.'" Id. (quoting Borges, 605 F.3d at 5).

Here, although the parties disagreed as to when the federal income tax returns for the Tax Years were filed under applicable law, there was no "genuine dispute as to any material fact" precluding a decision on summary judgment. As discussed below, the applicable non-bankruptcy law and the evidence presented leads to only one conclusion—that the tax returns for the Tax Years were not filed until 2017. Therefore, the bankruptcy court did not err in deciding the matter on summary judgment. The question then becomes whether the bankruptcy court

7

erred in ruling that the IRS was entitled to judgment as a matter of law as to the dischargeability of the Debtor's federal tax liabilities for the Tax Years.

**B.      Dischargeability of Tax Debts**

A chapter 7 debtor may be entitled to a discharge of many (but not all) types of debts. 11 U.S.C. § 727(a). "Section 523(a) addresses the nondischargeability of certain types of debts, including three categories of tax debts that are excepted from discharge." Berry v. Mass. Dep't of Revenue (In re Berry), No. 15-41218-CJP, 2016 WL 3676528, at *2 (Bankr. D. Mass. June 30, 2016) (citing 11 U.S.C § 523(a)(1)(A)-(C)).  It provides, in relevant part:

> (a)  A discharge under [§] 727 . . . does not discharge an individual debtor from any debt—
>       (1) for a tax or a customs duty—
>          (A) of the kind and for the periods specified in section . . . 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
>          (B) with respect to which a return, or equivalent report or notice, if required—
>               (i) was not filed or given; or
>               (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
>          (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

11 U.S.C. § 523(a)(1).  Section 507(a)(8)(A) provides, in part, that "[a]llowed unsecured claims of governmental units" shall have priority to the extent that such claims are for "a tax on . . . income . . . for a taxable year ending on or before the date of the filing of the petition . . . not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]"  11 U.S.C. § 507(a)(8)(A)(iii).  The party seeking to establish an exception to discharge bears the burden of proving by the preponderance of the evidence that its "claim comes squarely within an exception enumerated in . . . § 523(a)."  DeWitt v. Stewart (In re

Stewart), 948 F.3d 509, 520 (1st Cir. 2020) (quoting Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997)).

## II.     The Bankruptcy Court's Subject Matter Jurisdiction

We must, as a preliminary matter, consider the IRS's argument that the bankruptcy court lacked subject matter jurisdiction to determine the tax dispute between the parties. Subject matter jurisdiction is "a threshold question that must be resolved . . . before proceeding to the merits." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998); see also Sihabouth v. Bank of N.Y. Melon (In re Sihabouth), BAP No. EC-13-1378-JuTaKu, 2014 WL 2978550, at *4 (B.A.P. 9th Cir. July 2, 2014) ("Because subject matter jurisdiction goes to the power of the court to hear a case, it is a threshold issue and may be raised at any time and by any party.") (citation omitted). Our jurisdictional inquiry begins with an examination of the statute creating bankruptcy jurisdiction.

### A.     28 U.S.C. § 1334

The general grant of bankruptcy jurisdiction is found in 28 U.S.C. § 1334, which confers original and exclusive jurisdiction on the district court for (1) "all cases under title 11," and original, but not exclusive, jurisdiction for all civil proceedings (2) "arising under" title 11, (3) "arising in" title 11 cases, and (4) "related to" cases under title 11. 28 U.S.C. § 1334(a)-(b); see also Gupta v. Quincy Med. Ctr., 858 F.3d 657, 661 (1st Cir. 2017). Section 1334(e) also grants the district court exclusive jurisdiction relating to a debtor's property and property of the estate. See 28 U.S.C. § 1334(e)(1). District courts, in turn, have the authority to refer cases and proceedings to the bankruptcy courts. Gupta, 858 F.3d at 662 (citing 28 U.S.C. § 157(a)). In the District of Rhode Island, the district court has referred bankruptcy cases and proceedings by general order. See DRI L.R. Gen. 109(a).

An adversary proceeding "'[arises] under title 11' when the Bankruptcy Code itself creates the cause of action." Heaney v. Lamento (In re Whiz Kids Dev., LLC), 576 B.R. 731, 752 (Bankr. D. Mass. 2017) (citation omitted); see also Gupta, 858 F.3d at 662 (citations omitted). In contrast, the First Circuit has determined that "arising in" proceedings generally are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Gupta, 858 F.3d at 662-63 (quoting New. Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002)) (other citation omitted). "Related to" proceedings are those "which 'potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt[cy] estate.'" Id. at 663 (quoting In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68).[3] Accordingly, we must consider whether the bankruptcy court had subject matter jurisdiction to determine the parties' dispute under one of the specific jurisdictional provisions in 28 U.S.C. § 1334(b): arising under, arising in, or related to a bankruptcy case.

## B.     Application of the Jurisdictional Principles

It is well established that "[a] complaint under . . . § 523(a) to determine the dischargeability of a debt . . . arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) . . . ." Atl. Trade LLP v. Aung (In re Aung), 611 B.R. 145, 153 (Bankr. D. Mass. 2020); accord Jung v.

---

[3] While we acknowledge that some courts have held that § 505(a) is an independent source of bankruptcy court jurisdiction to determine "the amount or legality of any tax," see 11 U.S.C. § 505(a), we need not decide the nature of a bankruptcy court's jurisdiction under § 505(a)(1), if any, as we conclude that the bankruptcy court had subject matter jurisdiction to decide the matter before it under 28 U.S.C. § 1334(b).

IRS (In re Jung), 597 B.R. 872, 876 (Bankr. W.D. Wis. 2019) ("[A] determination of dischargeability does not exist outside bankruptcy. It arises under Title 11.").

The IRS argues, however, that the matter before the bankruptcy court was not a genuine dispute regarding the dischargeability of a debt; rather, the only issue was whether the Debtor's tax liabilities were properly assessed under I.R.C. § 6501. As this issue would exist outside of bankruptcy, the IRS contends, it was not an issue arising in or under title 11, and as resolution of the issue would have no effect on the administration of the estate in this "no asset case," it was not "related to" the bankruptcy case. Consequently, the IRS argues, the bankruptcy court lacked subject matter jurisdiction. We disagree.

At its core, the matter before the bankruptcy court was a proceeding to determine the scope of the Debtor's discharge. "Receiving a discharge is integral to the bankruptcy scheme, [and] is unique to bankruptcy law . . . ." Chen v. Huang (In re Huang), 509 B.R. 742, 753 (Bankr. D. Mass. 2014) (citation omitted). "As such, determinations that affect the scope of that discharge necessarily 'arise in' or 'arise under' the Bankruptcy Code." Id. "They fall squarely within the bankruptcy court's . . . jurisdiction, regardless of . . . whether there is a potential impact on the bankruptcy estate or the distribution to creditors." Id.; see also Kohl v. IRS (In re Kohl), 397 B.R. 840, 844 (Bankr. N.D. Ohio 2008) ("Matters concerning discharge, by their nature, do not directly implicate the estate" but they "clearly invoke a substantive right created by federal bankruptcy law and exist only within the confines of a bankruptcy case.").

Further, when determining whether a particular debt is dischargeable, "the bankruptcy court is not only tasked with determining whether the circumstances for nondischargeability enumerated in § 523(a) are established, but must also necessarily determine the scope of the debtor's 'liability on [the] claim' and the creditor's 'right to payment.'" In re Huang, 509 B.R. at

11

754 (highlighting that § 523(a) excepts from discharge certain tax debts and the Bankruptcy Court defines "debt" as a "liability on a claim" and a "claim" as a "right to payment") (citation omitted). Thus, "the determination of the amount of any nondischargeable debt (as well as the extent of the debtor's liability on that debt) [is] an essential element of the matter to be determined by, and within the jurisdiction of, the bankruptcy court." Id.

Here, the Debtor sought a determination that any taxes he owed for the Tax Years were dischargeable in his bankruptcy case. In order to evaluate the dischargeability question, the bankruptcy court necessarily needed to determine the scope of the Debtor's tax liability which, in turn, hinged on when he filed his tax returns for the Tax Years and whether the IRS's 2017 tax assessments were time-barred. Thus, the extent of the Debtor's tax liability was an essential element of the dischargeability determination and fell within the bankruptcy court's subject matter jurisdiction under 28 U.S.C. § 1334(b).[4]

We turn now to the merits of the appeal.

## III. The Bankruptcy Court Did Not Err in Granting Summary Judgment in Favor of the IRS

As discussed above, the pivotal question before the bankruptcy court was whether the Debtor had any tax liability for the Tax Years, which hinged entirely on when the tax returns were filed—in 2012 or in 2017. In granting summary judgment in favor of the IRS, the court ultimately determined that, whether the statutory mailbox rule of I.R.C. § 7502, the common-law mailbox rule, or the prison mailbox rule applied to determine that date, the Debtor was required to produce something more than his own declaration attesting to his placement of the tax returns in the mailbox to establish the filing date for those returns.

---

[4] For the same reasons, we also conclude that the bankruptcy court did not abuse its discretion by declining to abstain under 28 U.S.C. § 1334(c).

On appeal, the Debtor argues that the bankruptcy court erred because "a sworn declaration from a prison inmate" is sufficient to prove filing under the prison mailbox rule. Indeed, there was nothing more than the Debtor's sworn declaration before the bankruptcy court. As a result, the question before us is whether the Debtor's declaration alone was sufficient evidence of filing his tax returns in 2012, or whether corroborating evidence was required. To answer this question, we must consider the applicable law governing the filing of tax returns to determine what constitutes legally sufficient evidence of a tax return filing.

A.     **Common-Law Mailbox Rule**

"The Internal Revenue Code . . . does not expressly define what it means to 'file' a return." United States v. Harold (In re Harold), 588 B.R. 484, 490 (Bankr. E.D. Mich. 2018). Originally, the general rule was that a taxpayer's filing of tax documents was not complete until the document was delivered and received by the IRS. See Baldwin v. United States (In re Baldwin), 921 F.3d 836, 839-40 (9th Cir. 2019) (citations omitted). Under this "physical delivery rule," a taxpayer could not demonstrate timely filing of a tax document without proof of actual, physical delivery of the tax return to the IRS. Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r, 523 F.3d 140, 147 (3d Cir. 2008) (citation omitted). "To help determine when the pertinent document was physically delivered, courts developed the common-law mailbox rule." Id. Under this rule, "[i]f a document is properly mailed, the court will presume the United States Postal Service delivered the document to the addressee in the usual time." Id. (citing Hagner v. United States, 285 U.S. 427, 430 (1932); Rosenthal v. Walker, 111 U.S. 185, 193 (1884)). The addressee may then "rebut this presumption with evidence of untimely receipt." Id. (citing Hagner, 285 U.S. at 430).

B.  **Statutory Mailbox Rule – I.R.C. § 7502**

1.  **Generally**

In 1954, Congress enacted the so-called "statutory mailbox rule" set forth in I.R.C. § 7502 to create uniformity and "alleviate inequities arising from differences in mail delivery from one part of the country to another."  Miller v. United States, 784 F.2d 728, 730 (6th Cir. 1986) (citation omitted).  "Section 7502(a)(1) carves out an exception to the physical-delivery rule for tax documents sent and delivered by U.S. mail."  In re Baldwin, 921 F.3d at 840.  As is readily apparent from the language of I.R.C. § 7502(a), Congress intended the date of the postmark to take on legal significance:

> **(a) General rule.**
>
> **(1) Date of delivery.**  If any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return, claim, statement, or other document is required to be filed, or to which such payment is required to be made, *the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery* or the date of payment, as the case may be.
>
> **(2) Mailing requirements.**  This subsection shall apply only if—
>     (A) the postmark date falls within the prescribed period or on or before the prescribed date—
>         (i) for the filing (including any extension granted for such filing) of the return, claim, statement, or other document, or
>         (ii) for making the payment (including any extension granted for making such payment), and
>     (B) the return, claim, statement, or other document, or payment was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return, claim, statement, or other document is required to be filed, or to which such payment is required to be made.

26 U.S.C. § 7502(a) (emphasis added).

14

Thus, under this exception, "if a document is received by the IRS after the applicable deadline, it will nonetheless be deemed to have been delivered on the date that the document is postmarked[.]" In re Baldwin, 921 F.3d at 840. I.R.C. § 7502 also provides a presumption that arises when a return or other document is sent by U.S. registered mail. See 26 U.S.C. § 7502(c)(1)(A). Under I.R.C. § 7502(c)(1), when a tax document is sent by U.S. registered mail, the registered mail receipt constitutes "prima facie evidence" that the tax return was delivered to the IRS and "the date of registration shall be deemed the postmark date." 26 U.S.C. § 7502(c)(1)(B); see also In re Baldwin, 921 F.3d at 840.[5]

### 2. Whether Extrinsic Evidence May Be Used

The statute is silent as to whether a taxpayer can prove delivery of a tax return by means other than I.R.C. § 7502. This has resulted in a circuit split as to what effect, if any, the statute has on application of the common-law mailbox rule and whether extrinsic evidence may be used to meet the postmark requirement of the statute or whether an actual postmark must be produced. In re Baldwin, 921 F.3d at 841; Me. Med. Ctr. v. United States, 675 F.3d 110, 115 (1st Cir. 2012) (citation omitted). Some courts have held that I.R.C. § 7502 supersedes the common-law mailbox rule and supplies the exclusive exception to the physical-delivery rule. See, e.g., Miller, 784 F.2d at 731; accord Deutsch v. Comm'r, 599 F.2d 44, 46 (2d Cir. 1979) (citations omitted). These circuits hold that, where the taxpayer cannot show an actual postmark, the court may not accept "testimony or other evidence as proof of the actual date of mailing." Deutsch, 599 F.2d at 46 (citations omitted).

---

[5] The Treasury Secretary has established, by regulation, an equivalent "prima facie evidence of delivery rule" for documents sent by certified mail, electronic filing, and private delivery services. See Treas. Reg. § 301.7502-1 (2011); see also 26 U.S.C. § 7502(c)(2) and (f)(3) (authorizing the Treasury Secretary to promulgate such regulations).

Other courts have upheld the common-law mailbox rule and ruled that extrinsic evidence of mailing will create a rebuttable presumption of delivery to the IRS.  See, e.g., Sorrentino v. IRS, 383 F.3d 1187, 1193-94 (10th Cir. 2004); Anderson v. United States, 966 F.2d 487, 491-92 (9th Cir. 1992) (ruling that taxpayer could prove timely filing through extrinsic evidence); Estate of Wood v. Comm'r, 909 F.2d 1155, 1160-61 (8th Cir. 1990) (holding that I.R.C. § 7502 does not bar admission of extrinsic evidence to prove timely mailing of a federal income tax return).  It appears, however, that Anderson, Sorrentino, and similar cases may have been superseded by a subsequent amendment to Treasury Regulation § 301.7502-1(e), which interprets § 7502 as creating the exclusive exceptions to the physical-delivery rule.  See Treas. Reg. § 301.7502-1(e)(2)(i) (2011).  "The regulation makes clear that, unless a taxpayer has direct proof that a document was actually delivered to the IRS, I.R.C. § 7502 provides the exclusive means to prove delivery.  In other words, recourse to the common-law mailbox rule is no longer available."  In re Baldwin, 921 F.3d at 841-42.

Although the First Circuit has not decided whether I.R.C. § 7502 provides the exclusive method by which a taxpayer may prove timely mailing of a tax return to the IRS, it has acknowledged that "even if . . . extrinsic evidence is a viable means of proving a postmark for purposes of [I.R.C.] § 7502," taxpayers must "[a]t a minimum," offer "*some additional corroborating evidenc*e."  Me. Med. Ctr., 675 F.3d at 117 (emphasis added) (citation omitted).  A taxpayer who fails to provide such corroborating evidence, the First Circuit determined, does "not come close to presenting the 'extraordinarily rare' circumstances that would satisfy the requirements of the statute without providing an actual postmark, even according to the law of the most permissive circuits."  Id. (quoting Wood, 909 F.2d at 1161).

16

Other courts have similarly held that "even under the [more lenient] evidentiary showing adopted by Wood and Anderson," a taxpayer cannot meet his burden where he presents only "uncorroborated, self-serving testimony." Pizzuto v. IRS (In re Pizzuto), 384 B.R. 105, 111 (Bankr. D.N.J. 2008) (citing cases); see also Crook v. Comm'r, 173 F. App'x 653, 657 (10th Cir. 2006) (ruling that uncorroborated testimony of the taxpayer was insufficient to establish timely mailing); Sorrentino, 383 F.3d at 1195 (holding that taxpayer's "self-serving testimony, without corroborating evidence [was] insufficient"); Davis v. United States, 230 F.3d 1383, at *3 (Fed. Cir. 2000) (holding that the taxpayer's uncorroborated testimony would not suffice "under any view of the law"); Wade v. Comm'r, 185 F.3d 876, at *2 (10th Cir. 1999) (concluding that the taxpayer's self-supporting testimony that he remembered mailing his return immediately before lunch with his accountant was "not nearly enough evidence" to demonstrate timely filing). In fact, the Crook court noted that, "[d]espite the disagreement between the circuits as to the type of proof which may be admitted to prove the date of mailing, *no court* has relied solely on the uncorroborated testimony of the taxpayer" to sustain a finding of timely mailing. Crook, 173 F. App'x at 657 (emphasis added) (citing cases). Consequently, it is well established that, under any evidentiary standard, a taxpayer's uncorroborated, self-serving testimony is insufficient to prove the timely mailing of a tax return.

### 3. Applying the Statutory Mailbox Rule

Here, the IRS maintained that, although the Debtor claimed to have mailed tax returns to the IRS in 2012, the IRS never received any such returns. To support its assertion, the IRS submitted copies of certain IRS certificates, known as "Forms 4340," for the Tax Years, reflecting that the IRS had no record of receiving tax returns for the Tax Years until January 4, 2017. The U.S. Tax Court has "repeatedly confirmed that a Form 4340 can provide the basis for

17

finding that a taxpayer has not filed a return." Wheeler v. Comm'r, 446 F. App'x 951, 953 (10th Cir. 2011) (citing Hazel v. Comm'r, 95 T.C.M. (CCH) 1528, at *2-3 (2008) (collecting cases)). Accordingly, the IRS met its evidentiary burden.

To rebut this evidence, the Debtor was required to produce either a postmark showing the date of delivery or prove he sent the tax returns by some method sanctioned by I.R.C. § 7502 or by regulations promulgated by the Treasury Secretary. 26 U.S.C. § 7402(a) & (c); Treas. Reg. § 301.7502-1. The record reflects, however, that the only evidence before the bankruptcy court as to the mailing of the Debtor's tax returns in 2012 was the Debtor's own uncorroborated assertions in his declaration that, sometime in 2012, he placed the returns for the Tax Years in a single envelope and deposited that envelope in the mailbox in the prison yard designated for outgoing mail. His self-serving testimony, without corroborating evidence, was insufficient to satisfy his evidentiary burden whether applying the evidentiary standard set forth in I.R.C. § 7502 or the more lenient evidentiary standard allowed under the common-law mailbox rule. See Sorrentino, 383 F.3d at 1195.

### C. The Prison Mailbox Rule

#### 1. Generally

The Debtor's next argument is that he is entitled to the benefit of the prison mailbox rule, which provides that the date of a court filing by an incarcerated individual is deemed to be the date on which the inmate gives the document to prison officials for mailing, even if it is never received by the court. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a pro se prisoner's notice of appeal is deemed to be "filed" on the date he submits it to prison authorities for mailing, rather than on the date that it is received by the clerk). Some courts have expanded the rule announced in Houston to apply to other types of court filings.

18

The First Circuit has acknowledged the applicability of the prison mailbox rule to determine the date for certain other court filings, but has also stated that to benefit from the rule, the prisoner must have "complie[d] with the prison's procedures for sending legal mail," if the prison has such a system. Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir. 2002) (stating that the prison mailbox rule governs the determination of when a prisoner's filing under 42 U.S.C. § 1983 has been completed); see also Morales-Rivera v. United States, 184 F.3d 109, 109 (1st Cir. 1999) (holding that "a *pro se* prisoner's motion under 28 U.S.C. § 2255 or § 2254 is filed on the date that it is deposited in the prison's internal mail-system for forwarding to the district court, provided that the prisoner utilizes, if available, the prison's system for recording legal mail").

Although there is some question as to whether the prison mailbox rule is limited to court filings, see, e.g., Whitaker v. United States, No. 5:18-cv-51-MCR/MJF, 2019 WL 4722465, at *7 (N.D. Fla. Aug. 27, 2019) (highlighting the lack of authority for applying the prison mailbox rule to the filing of federal tax returns), we need not make that determination here. Even if the less stringent standard of the prison mailbox rule applied, the Debtor has failed to meet his evidentiary burden under that rule.

### 2. Evidentiary Burden Under Prison Mailbox Rule

To obtain the benefit of the prison mailbox rule, the Debtor was required to produce something more than his self-serving declaration of mailing; some kind of corroborating evidence such as a postmark date, use of registered mail, or a prison mail log was required. See, e.g., Oliver v. Comm'r of Mass. Dept. of Corrections, 30 F.3d 270, 272 (1st Cir. 1994) (observing that some courts have held that a prisoner who fails to use the prison log system "forgoes the advantage of the special filing rule") (citations omitted); see also Ray v. Clements,

19

700 F.3d 993, 1011 (7th Cir. 2012) (ruling that to receive the benefit of the prison mailbox rule, "[t]he prisoner's sworn declaration should identify the who, what, when, where, how, and why of his alleged delivery to a prison official" and that "where the purported filing is not received by the court, the petitioner must supply a sworn declaration attesting to these facts *plus some other corroborating evidence*") (emphasis added); Hatch v. Comm'r, 364 F. App'x 401, 403 (10th Cir. 2010) (rejecting inmate's appeal of Tax Court's dismissal of his petition to re-determine a tax deficiency as untimely where inmate failed to provide a prison log of mailing or other corroborating evidence, and concluding that "proof [of mailing] needs to be something more than self-serving declarations") (citations omitted); Huizar v. Carey, 273 F.3d 1220, 1224 (9th Cir. 2001) (applying prison mailbox rule to the filing of a habeas corpus petition because "the prison's log of outgoing mail provide[d] strong evidence of the date [the petitioner] handed over his petition"). Although the Debtor cites cases from the First Circuit to support his argument that his declaration alone was sufficient evidence of the mailing of his tax returns, those cases are inapposite because they involve Fed. R. App. P. 4(c). Fed. R. App. P. 4(c)(1) provides that an inmate confined in a correctional institution may file a notice of appeal by depositing it in the institution's internal mail system on or before the last day of filing, and that timely filing may be shown by submission of a declaration by the prisoner. Fed. R. App. P. 4(c)(1). However, the rule is only applicable for filings to the *courts of appeal*. Id. It does not apply to the filing of tax returns with the IRS. See Crook, 173 F. App'x at 655.

Here, the only evidence as to the alleged mailing of the Debtor's tax returns was his uncorroborated assertion in his declaration that he deposited his tax returns in the prison mailbox in 2012. There is no evidence relating to an actual postmark date, nor did the Debtor assert that he used certified or registered mail or a prison log of mailing. Therefore, there is no

corroborating evidence in the record that the Debtor did, in fact, mail tax returns for the Tax Years in 2012. As such, we conclude that, even if the prison mailbox rule were available to the Debtor, the Debtor failed to satisfy his evidentiary burden under that rule.

### D. Grant of Summary Judgment

Based on the foregoing, we discern no error in the bankruptcy court's conclusion that the IRS had met its burden of proving that the Debtor did not file tax returns for the Tax Years in 2012, and that the Debtor had failed to rebut that evidence. Under the circumstances and evidence presented, there was no genuine dispute of material fact as a rational factfinder could resolve the issue of whether the Debtor filed the tax returns in 2012 only in favor of the IRS. Therefore, the IRS's assessment of taxes in 2017 was timely and the Debtor's resulting tax liabilities were excepted from discharge under § 523(a)(1).[6] As such, the bankruptcy court did not err in ruling that the IRS was entitled to judgment as a matter of law.

### CONCLUSION

We find no error in the bankruptcy court's exercise of its subject matter jurisdiction or its entry of the IRS Judgment excepting the Debtor's federal income tax debts for the Tax Years from discharge. Accordingly, we **AFFIRM**.

---

[6] Like the parties and the bankruptcy court below, we assume that the tax debts for the Tax Years are excepted from discharge under either § 523(a)(1)(A) or (B) and we need not decide under which subparagraph these particular debts fall. We are aware of the First Circuit's decision in Fahey v. Mass. Dep't of Revenue (In re Fahey), 779 F.3d 1 (1st Cir. 2015) (interpreting the definition of "return" for purposes of § 523(a)), but the parties made no argument about the import of the decision, either in the bankruptcy court or on appeal.

21