*Comptroller of Maryland v. James R. Myers, et al*, No. 95, September Term, 2020, Opinion by Graeff, J.

**TAXATION – INCOME TAXES – PAYMENT – RECOVERY OF TAXES PAID – STATUTE OF LIMITATIONS – EVIDENCE OF TIMELY FILING**

The limitations period in Md. Code Ann., Tax-General Article ("TG") § 13-1104(c)(1) is inextricably keyed to § 6511 of the Internal Revenue Code ("I.R.C."), and therefore, pursuant to TG § 10-107, the Comptroller and Tax Court must apply administrative and judicial interpretations of I.R.C. § 6511, including Treas. Reg. § 301.7502-1 and I.R.C. § 7502. Accordingly, in a situation where a taxpayer mails a claim for a refund, but the Comptroller does not receive the claim within the limitations period, the taxpayer can show timely filing only by a receipt of registered mail or other proof permitted pursuant to Treas. Reg. § 301.7502-1 and I.R.C. § 7502.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0095

September Term, 2020

_____

COMPTROLLER OF MARYLAND

v.

JAMES R. MYERS, ET AL.

_____

Graeff,
Kehoe,
Zic,

JJ.

_____

Opinion by Graeff, J.

_____

Filed: July 1, 2021

*Ripken, Laura S., J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.



Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

This appeal addresses what a taxpayer must show to prove that he or she "filed" a document with the Comptroller. James and Monica Myers, appellees, prepared amended tax returns seeking a refund for tax years 2007, 2008, 2009, 2010, 2011, 2012, and 2013. The Comptroller denied refunds for tax years 2008, 2009, and 2012, alleging that appellees had failed to file their amended returns for those years within the applicable limitations period. The Tax Court, based on the testimony of appellees that they timely mailed the amended returns, reversed the Comptroller's decision and ordered refunds for the 2008, 2009, and 2012 tax years. The Circuit Court for Anne Arundel County affirmed the decision of the Tax Court.

On appeal, the Comptroller presents the following questions for this Court's review, which we have rephrased, as follows:

1. In a situation where the Comptroller did not acknowledge receipt of a tax return, did the Tax Court err in relying on evidence other than a receipt of registered mail?

2. Did the Tax Court err in failing to grant summary judgment to the Comptroller, when the only material facts in the record established that the Comptroller received the refund claims after the statute of limitations had expired?

For the reasons set forth below, we shall reverse the decision of the circuit court.

**FACTUAL AND PROCEDURAL BACKGROUND**

The evidence indicated that appellees routinely filed their federal and state tax returns in a timely fashion. Appellees filed their original 2008 income tax return on

October 15, 2009, their 2009 income tax return on October 15, 2010, and their 2012 income tax return on October 15, 2013.[1]

During this time frame, an issue relating to Maryland's tax scheme was working its way through the courts. On May 18, 2015, the Supreme Court issued its opinion in *Comptroller of the Treasury of Maryland v. Wynne*, 575 U.S. 542 (2015). *Wynne* addressed a provision in Maryland's tax law that provided a credit to offset State taxes for income taxes paid to other states on income earned in other states, but did not issue a credit to offset county income taxes. *Id.* at 545–46. The Court held that this was unconstitutional because it taxed income earned interstate at a higher rate than income earned intrastate, and therefore, it discriminated against interstate commerce in violation of the dormant Commerce Clause. *Id.* at 547–48, 564–65. "As a result, Wynne and others similarly affected who paid county income taxes as well as taxes to other states for income earned therein became entitled to refunds of a portion of their Maryland 'piggy back' taxes." *Holzheid v. Comptroller of the Treasury of Maryland*, 240 Md. App. 371, 382 (2019), *cert. denied sub nom.*, 469 Md. 655 (2020).

In 2011, prior to the *Wynne* decision, but while the case was working its way through the court system, appellees' accountant, Ms. Truly, informed them that, if they filed amended tax returns, there was a possibility that they could benefit from the outcome of the *Wynne* decision. Ms. Truly advised appellees that, given the three-year statute of

---

[1] Although tax returns typically are due on April 15, appellees habitually requested extensions and filed their tax returns on October 15, which is within the extension period.

2

limitations for filing a refund on tax returns, appellees would need to file their amended returns prior to the outcome of the *Wynne* case.

Ms. Truly testified that, with appellees' agreement, she prepared amended tax returns for the 2007 through 2013 tax years.[2] Mr. Myers testified that he mailed all the amended returns to the Comptroller, but he did not send them by certified mail, and therefore, he did not have a receipt showing they were mailed. After the Supreme Court's 2015 decision in *Wynne*, appellees advised Ms. Truly that they previously had mailed all of the amended returns that Ms. Truly had prepared, but they did not receive all of their refunds. They asked Ms. Truly to follow up with the Comptroller.

On November 16, 2016, Ms. Truly filed a Form 156, requesting appellees' tax records. The Comptroller did not respond to this request. Ms. Truly then called the Comptroller's office, which stated that it had not received Ms. Truly's Form 156. Ms. Truly sent the form a second time, but again, the Comptroller did not respond.

In 2017, Ms. Truly became aware that the Comptroller was not in possession of appellees' 2008, 2009, and 2012 amended returns. She testified that she followed the accepted procedure, i.e., to resubmit the amended returns for those years. Ms. Truly included a letter advising the Comptroller that the 2008, 2009, and 2012 amended returns had been timely filed, but they were missing in the Comptroller's office.[3] Appellees then

---

[2] Ms. Truly testified that she prepared the 2008 amended tax return on January 24, 2012, the 2009 amended tax return on July 8, 2013, and the 2012 amended tax return on August 4, 2015.

[3] The Comptroller ultimately received amended returns for the 2007, 2010, and 2011 tax years and granted tax refunds for those years.

mailed a second set of amended returns, as well as an original amended return for 2013, on August 11, 2017. The Comptroller received them on August 16, 2017.

The Comptroller denied appellees' refund requests for the 2008, 2009, and 2012 tax years. The Comptroller alleged that he had not received appellees' amended returns for these years until August 16, 2017, which placed the refund requests outside of the three-year limitations period.

On March 13, 2018, the Comptroller held an informal hearing. Andre Aviles, a member of the Revenue Administrative Division of the Comptroller's Office, testified that the Comptroller received appellees' 2008, 2009, and 2012 amended returns requesting refunds on August 16, 2017. Appellees alleged that they had timely filed their amended returns several years before, within the limitations period. On August 11, 2017, after their accountant was advised that the Comptroller could not locate their 2008, 2009, and 2012 amended returns, appellees refiled their amended returns for these years.

On May 9, 2018, the Hearing Officer issued appellees a Notice of Final Determination, affirming the denial of appellees' 2008, 2009, and 2012 refund requests. The Hearing Officer found that appellees' amended returns for these tax years were not filed until August 16, 2017, and therefore, the claims were untimely.

On June 11, 2018, appellees filed a Petition of Appeal to the Maryland Tax Court. They listed the amount in controversy as $58,419, which included: $18,314 for 2008; $21,845 for 2009; and $18,260 for 2012.

The Comptroller subsequently filed a motion for summary judgment, alleging that appellees failed to timely file amended returns for tax years 2008, 2009, and 2012. He

4

attached an affidavit of the custodian of records, Mr. Aviles, who stated that the Comptroller did not possess any filings from appellees for these tax years other than those that the Comptroller received on August 16, 2017.

Appellees filed an opposition to the Comptroller's motion for summary judgment. The opposition did not include an affidavit, but the pleading stated that, "upon reasonable belief and evidence to be provided," appellees' original claims for refunds were timely submitted, and "the Comptroller misplaced the timely filed original amended returns for the tax years in issue."

The Comptroller filed a reply to appellees' opposition. The Comptroller argued that appellees did not offer a compelling basis to deny summary judgment because they failed to attach an affidavit showing a dispute of a material fact, and the opposition assumed "an incorrect understanding of the mailbox rule."

In response, appellees filed a motion to supplement their opposition with affidavits. The affidavits signed by appellees stated that, based on personal knowledge, the facts contained in their opposition and their Petition of Appeal were "true to the best of [their] knowledge, information and belief."

The Comptroller subsequently filed a motion to strike the motion to supplement and appellees' affidavits. He argued, among other things, that the affidavits were defective because they did not contain specific facts, but instead, they generally referenced pleadings and then stated that the statements were true to the best of their knowledge, information, and belief.

5

On October 24, 2018, the Tax Court held a motions hearing. It denied the Comptroller's motion to strike, stating that, as an administrative agency, it had "great flexibility" with regard to the admission of evidence.

With respect to the motion for summary judgment, the Comptroller argued that he had established by affidavit that the amended returns were not timely filed. He argued that, pursuant to Md. Code Ann., Tax-General Article ("TG") § 13-1104, the amended returns needed to be filed within three years after the tax was paid, and the August 16, 2017 filings fell outside of that time period. The Comptroller argued that, if a taxpayer alleges that the Comptroller lost tax returns, pursuant to the Internal Revenue Code, 26 U.S.C. § 7502 ("I.R.C. § 7502"), they needed to show proof of mailing through a return receipt of certified mail.

Counsel for appellees argued that there were facts in dispute, and therefore, summary judgment was not appropriate. Counsel argued for the opportunity to present corroborative evidence of mailing. The Tax Court reserved on the summary judgment motion and set the case for trial.

The Comptroller subsequently filed a Request for a Ruling on a Question of Law. He presented the Tax Court with the following question: "Whether [appellees] must enter into evidence receipts of registered mail, as applied under [I.R.C.] §§ 7502(c) and (f), to prove timely filing of their claims for refund of taxes for years 2008, 2009, and 2012, when the Comptroller denies timely filing?" The Comptroller noted that appellees testified at their depositions that they timely sent three amended returns to the Comptroller, on three different occasions, but they sent the amended returns by first-class mail, not registered

6

mail as required by the IRS pursuant to § 7502(f). The Comptroller asserted that his office did not receive the amended returns in the years that they allegedly were sent, and it received the amended returns on August 16, 2017, which was past the three-year statute of limitations. The Comptroller argued that, in this situation, to determine timely filing pursuant to TG § 13-1104(c), I.R.C. § 7502 must be applied, which required filing to be shown by physical delivery, a postmark on an envelope, or, if the document was not received, a receipt of registered mail.

Appellees disputed the Comptroller's interpretation of TG § 13-1104(c). Over the course of several months, appellees and the Comptroller submitted multiple replies and counter-replies regarding the question of law presented.

The case went to trial in the Tax Court on August 14, 2019. Ms. Truly testified that she had prepared appellees' amended returns based on the *Wynne* litigation for the 2007 through 2013 tax years. She prepared the 2008 refund claim on January 24, 2012, the 2009 refund claim on July 8, 2013, and the 2012 refund claim on August 4, 2015. The firm at which Ms. Truly worked billed appellees for all of the amended returns, and appellees testified that they paid those invoices prior to the limitations period.

Ms. Truly testified that she personally sent, by certified mail, the 2007 amended return requesting a refund because it was very close to the amended due date. The other amended returns were sent to appellees to sign and mail. In 2015, appellees informed her that they had mailed the amended returns to the Comptroller. Ms. Truly testified, however, that she typically did not follow up to see if the amended returns had been received.

7

After the 2015 *Wynne* decision, appellees received refunds for some years, but not others. In 2016, Ms. Truly contacted the Comptroller regarding the status of appellees' refund requests. On April 25, 2017, Ms. Truly advised Mr. Myers in an email that the Comptroller did not have a record of receiving the 2008, 2009, or 2012 amended returns, and she asked if he had receipts for certified mail from when he sent them. She testified, however, that taxpayers are not required to mail returns certified.

Mr. and Mrs. Myers testified extensively regarding the dates on which they mailed the 2008, 2009, and 2012 amended returns. When asked on what date he mailed the 2008 amended return, Mr. Myers initially stated that he did not know the exact date, but he had "a very good estimate and deduction about what that date is." He testified that he would have mailed the 2008 amended return on January 28, 2012, based on his and Mrs. Myers' schedules. He explained that he would have signed the amended return in private after his morning exercise, then presented the amended return to Mrs. Myers for her signature, then placed the signed refund claim in a large 8.5" by 11" envelope, and then taken it to the Glen Echo post office to be weighed and mailed. Mr. Myers consistently encountered the same postal clerk, Tiffany, who would weigh the envelope and then provide the appropriate amount of postage. Mr. Myers testified that he followed the exact same routine for the 2009 and 2012 amended returns, and he mailed the 2009 amended return on July 13, 2013, and the 2012 amended return on August 8, 2015. Mr. Myers did not have a receipt for certified mailing for any of those returns.

Mrs. Myers corroborated this testimony. She stated that she had signed each of the 2008, 2009, and 2012 amended returns after Mr. Myers requested her signature, and Mr. Myers took the amended returns to the post office immediately thereafter.

Mr. Aviles, the Custodian of Records for the Comptroller, also testified. When asked if he personally searched for appellees' 2008, 2009, and 2012 amended returns, he stated that he did, but only to a certain extent. He personally searched the files in the Annapolis office, but others searched files in other locations. He stated that returns identified as "*Wynne* returns were segregated and put in a different folder to keep all the taxpayers with those claims in one area." Amended tax returns, including refund claims, could not be electronically filed and had to be manually verified. Mr. Aviles noted that the Comptroller had sent appellees a letter informing them that the Comptroller was in receipt of their 2007 amended return. A letter of receipt also was sent for the 2010 amended return, but it was incorrectly addressed and never reached appellees' mailbox.

Before Mr. Aviles left the stand, the following colloquy occurred between Mr. Aviles and the Tax Court:

> THE COURT: All right, I have a question for you, Mr. Aviles. Say a taxpayer -- you can't -- the Comptroller's office can not locate a certain return that was filed, okay? Allegedly was filed. However, the taxpayer produces a certification that it was mailed, okay? Doesn't necessarily say restricted delivery, just a certified mailing. Let's deal with that one first. What would the position of the Comptroller be?
>
> MR. AVILES: Without the receipt is what you're asking me?
>
> THE COURT: I'm saying that the taxpayer produces a certificate from the postal service indicating that it was mailed, but the Comptroller's office has not located the return. What would be the position of the Comptroller's office in that situation? Would you accept a -- the same return that the

9

taxpayer allegedly filed and has proof that he filed? Would the Comptroller's office accept that return?

MR. AVILES: Yes. Generally speaking if that is the proof of mailing, if it was sent to our address at 110 Carroll Street and the Comptroller for any reason can not locate the returns, and the benefit of the doubt then it gives to the taxpayer that we process the return as it being filed timely.

THE COURT: Okay.

In closing argument, counsel for the Comptroller made clear that he was not challenging the veracity of appellees' testimony that they timely mailed the amended returns. Rather, the Comptroller was asking the Tax Court to accept the legal proposition that the uncorroborated testimony of a taxpayer regarding mailing was not enough, and there needed to be other evidence of mailing, such as a certified receipt or testimony of a postal clerk.

The Tax Court then issued its oral ruling. It stated that Ms. Truly's testimony that Mr. Myers was diligent and timely in filing returns was circumstantial evidence that appellees paid their taxes and filed their returns on time, and it indicated a course of conduct of compliance over many years, which the Tax Court found supported appellees' claim. The Tax Court further credited Ms. Truly's testimony, supported by bills, that the amended returns seeking refunds were prepared on the dates to which she testified. The Tax Court found it "inconceivable" that Mr. Myers would not have filed the 2008, 2009, and 2012 amended returns, noting that Mr. Myers had testified, with great detail, concerning the days and manner in which he had mailed the amended returns for those years. The Tax Court stated that "[t]here was really no contest about whether or not Mr. Myers did or did not in

10

fact do exactly what he said he did," but rather, the Comptroller's position was that there needed to be affirmative proof that appellees did mail the returns.

In dismissing that contention, the Tax Court explained the following:

THE COURT: When I asked Mr. Aviles, you know, if a certified mailing was given to the Comptroller's office in a situation where the returns could not be filed -- were not -- could not be found, Mr. Aviles indicated, yes, under those circumstances they would accept -- they would accept the returns indicating that somehow or another the returns were in fact misplaced, lost or whatever, by the Comptroller's office or they were in fact mailed and for whatever reason were not delivered to the Comptroller's office. Again, if the Comptroller has the ability to accept a certified mailing from a taxpayer, it seems to me that the Court ought to be able to judge the credibility of a witness and find that the taxpayer did in fact file the returns that he indicated that he filed.

So in this situation the Court is really merely just substituting its opinion for the Comptroller when the Comptroller has . . . certified evidence. I think hearing a taxpayer testify that he did everything he could to mail the returns, I think that's sufficient from the Court's standpoint. And the Court in the past has ruled so. And I'm not going to – I'm not going to change the decisions or the policy of this court with respect to that particular evidentiary filing.

I'm not going to preclude the Court from requiring some written documentation from the post office or some other witness when I am convinced, without any doubt, that the taxpayer did in fact mail the returns. I don't know where the returns are. And I don't -- I don't know. And it was never indicated that the returns were returned to the taxpayer, so I'm assuming they are either lost in the United States Postal Service, and I would venture to say there's not anybody in this room -- no, there's not anybody in this building who has not sent out a letter to someone and it has not been received and it was not returned to the sender. I guarantee.

On September 24, 2019, the Tax Court issued an order reversing the denials of the refund claims for the tax years 2008, 2009, and 2012. The Comptroller sought review of the Tax Court's decision in the Circuit Court for Anne Arundel County.

11

On March 17, 2020, after a hearing, the circuit court issued an order affirming the Tax Court. In its memorandum opinion, the court noted that the Comptroller did not dispute that the Tax Court's factual findings were supported by the evidence, but rather, he argued that the Tax Court erred as a matter of law for two reasons. First, the Comptroller argued that the Tax Court erred by allowing appellees to prove timely filing in the absence of receipts of certified mail. Second, the Comptroller argued that the Tax Court erred when it reserved on the issue of summary judgment "despite being constrained to rule in the Comptroller's favor for procedural reasons." The court stated that it was not persuaded by either of the Comptroller's arguments.

With respect to the Comptroller's argument that the Tax Court improperly reserved ruling on its motion for summary judgment because the opposition was not supported by an adequate affidavit as required by Md. Rule 2-501(a), the court concluded that the Tax Court's procedural rules were not as strict as Md. Rule 2-501. Moreover, the circuit court determined that it was reasonable and not an abuse of discretion for the Tax Court to reserve its ruling until it had a complete factual record.

The court then turned to the Comptroller's argument that the Tax Court erred as a matter of law in deciding that the amended returns were timely filed in the absence of receipts of registered mail showing when the returns were mailed. The court noted that the "Comptroller [could] not point to a Maryland statute or administrative regulation [which stated] that a receipt of registered mail is necessary to prove timely filing in an action," but rather, it argued that Maryland law must incorporate federal tax law to this effect. The court found that the federal law regarding the evidence necessary to establish a timely-filed

12

tax return, i.e., a registered mail receipt, was not controlling law in Maryland. Rather, the Tax Court was entitled to weigh the evidence, and based on that evidence, it properly found that the amended returns were filed within the limitations period.

This appeal followed.

## STANDARD OF REVIEW

The Tax Court is an administrative agency "subject to the same standards of judicial review as other administrative agencies." *Maizel v. Comptroller of the Treasury*, No. 508, 2021 WL 1681271, at *6 (Md. App. April 29, 2021) (quoting *Frey v. Comptroller of the Treasury*, 422 Md. 111, 136–38 (2011)). As such, we look through the decision of the circuit court and review the decision of the agency. *Id.* Our review is "limited to determining if there is substantial evidence in the record as a whole to support the [Tax Court's] findings and conclusions, and to determine if the [Tax Court's] decision is premised upon an erroneous conclusion of law." *Comptroller of the Treasury v. Taylor*, 465 Md. 76, 86 (2019) (quoting *Comptroller of the Treasury v. Taylor*, 238 Md. App. 139, 145 (2018)). We will not affirm an agency if its order "is premised solely upon an erroneous conclusion of law." *Comptroller of the Treasury v. World Book Childcraft Int'l, Inc.*, 67 Md. App. 424, 438, *cert. denied*, 307 Md. 260 (1986). If the agency did not err in its interpretation of the law, we review the agency's "factual findings to determine if they are supported by substantial evidence." *Id.* at 438–39.

## DISCUSSION

## I.

The Comptroller's first contention is that the Tax Court erred in determining that appellees timely filed their amended returns seeking refunds when they did not submit evidence of a receipt of registered mail. Before addressing the different views of the parties, we note that they agree on the dates on which the amended returns needed to be filed.

## A.

## Statute of Limitations

TG § 13-1104(a) addresses the time for filing claims for a refund as follows:

(a) Except as otherwise provided in this section, a claim for refund under this article may not be filed after 3 years from the date the tax, interest, or penalty was paid.

\* \* \*

(c) Except as provided in paragraph (2) of this subsection, a claim for refund or credit of overpayment of . . . income tax may not be filed after the periods of limitations for filing claims for refund or credit of overpayment set forth in § 6511 of the Internal Revenue Code [("I.R.C. § 6511")].

I.R.C. § 6511, provides, in pertinent part, as follows:

(a) Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later[.]

26 U.S.C. § 6511.

14

Accordingly, the parties agree that appellees had three years to file their amended returns seeking a refund. The dates in this case were as follows: (1) for 2008, the initial return was filed on October 15, 2009, and the amended return needed to be filed by October 15, 2012; (2) for 2009, the initial return was filed by October 15, 2010, and the amended return needed to be filed by October 15, 2013; and (3) for 2012, the initial return was filed on October 15, 2013, and the amended return needed to be filed on October 15, 2016.

## B.

## Parties' Contentions

The parties agree that the Comptroller did not receive the documents during the three-year limitations period. They disagree, however, on whether appellees proved that the documents were timely "filed" within that time period.

Appellees assert that they timely filed their amended returns by mailing them within the limitations period. In support, they presented testimony relating to the mailing of each return.

The Comptroller does not dispute that there was a basis for the Tax Court to accept this testimony. He argues, however, that this evidence did not permit a finding that the returns were timely filed because "a taxpayer must establish timely mailing through a receipt of registered mail." Because appellees did not have a receipt of registered mail, the Comptroller argues that the Tax Court erred in reversing its decision denying appellees' refund claims.

Appellees contend that proof of mailing is not limited to a receipt of registered mail. Rather, they assert that Maryland has a long history of relying on the common-law

15

"mailbox rule," a "rule of evidence that the testimony of a witness that he properly addressed, stamped and mailed a letter raises a presumption that it reached its destination at the regular time and was received by the person to whom it was addressed." *Kolker v. Biggs*, 203 Md. 137, 144 (1953). *Accord Landover Assocs. Ltd. P'ship v. Fabricated Steel Prod., Inc.*, 35 Md. App. 673, 681 ("Maryland has recognized a 'legal presumption' from proof of proper mailing that the communication was received" based on the "presumption that in delivering the mail the postal authorities do what the law requires of them."), *cert. denied*, 281 Md. 740 (1977). Appellees argue that the Tax Court "was entitled to judge the credibility of all party witnesses and weigh all direct and circumstantial evidence before determining" that they timely mailed/filed their amended refund claims for tax years 2008, 2009, and 2012.

The Comptroller's argument to the contrary is predicated on the principle that "Maryland income tax law is to be construed in a fashion conformable to the Internal Revenue Code to which it is inextricably keyed." *Comptroller of the Treasury v. Diebold, Inc.*, 279 Md. 401, 408 (1977). It notes that TG § 10-107 provides that, "[t]o the extent practicable, the Comptroller shall apply the administrative and judicial interpretations of the federal income tax law to the administration of the income tax laws of this State." The Comptroller contends, through an extended analysis, discussed in more detail, *infra*, that the law regarding timely filing of refund claims set forth in TG § 13-1104(e) is "inextricably keyed" to I.R.C. § 6511 through its express reference in the text, and in applying I.R.C. § 6511, the Tax Court must apply IRS administrative and judicial

interpretations of § 6511, including I.R.C. § 7502(c) and Treas. Reg. § 301.7502.1, which require a registered mail receipt in circumstances similar to those present in this case.

## C.

## Analysis

In assessing the parties' claims, we must determine two things. First, what is the applicable federal law regarding the evidence that may be presented regarding the filing date of tax documents that were mailed? Second, is this federal law applicable to appellees' claim in the Tax Court?

## 1.

## Federal Law Regarding Filing

In determining when a claim for a refund has been filed, the original rule, the physical delivery rule, provided that a federal tax return is filed when it is received by the IRS. *Miller v. United States*, 784 F.2d 728, 730 (6th Cir. 1986). Because this rule "left taxpayers vulnerable to the vagaries of the postal service," where documents could be delayed or lost "through no fault of the taxpayer," some courts applied the common-law mailbox rule, which permitted proof of mailing that gave rise to a presumption that the document was physically delivered "in the time such a mailing would ordinarily take to arrive." *Baldwin v. United States*, 921 F.3d 836, 840 (9th Cir. 2019), *cert. denied*, 140 S.Ct. 690 (2020).

In 1954, Congress created exceptions to the physical delivery rule when tax documents are sent by mail, providing a statutory mailbox rule when certain requirements are met. I.R.C. § 7502(a); *Maine Med. Ctr. v. United States*, 675 F.3d 110, 114 (1st Cir.

17

2012). The first statutory exception provides that, if a document is mailed by the due date, the postmark is deemed the date of delivery, even if it is received after the due date. I.R.C. § 7502(a)(1). This exception applies only if the document is actually delivered to the IRS. *Baldwin*, 921 F.3d at 840. The second exception provides that, if a document is sent by registered mail, such registration is prima facie evidence that the document was delivered, even if the IRS claims not to have received it. I.R.C. § 7502(c)(1). *See also Baldwin*, 921 F.3d at 840–41 ("Section 7502(c)(1) provides an exception to the physical-delivery rule applicable to documents sent" by registered mail, and subsection (A) "provides a presumption that a document sent by registered mail was delivered even if the IRS claims not to have received it, so long as the taxpayer produces the registration as proof.").

In the years that followed the enactment of this statute, courts rendered conflicting decisions regarding the effect the statute had on the common-law mailbox rule. *See Baldwin*, 921 F.3d at 841 (collecting cases). Some courts held that § 7502 superseded the common-law mailbox rule and provided the exclusive exceptions to the physical delivery rule, and therefore, other extrinsic evidence could not be offered as proof of a timely mailing. *See, e.g.*, *Miller*, 784 F.2d at 730; *Deutch v. Comm'r.*, 599 F.2d 44, 46 (2d Cir. 1979), *cert. denied*, 444 U.S. 1015 (1980); *Parr v. United States*, 694 F. Supp. 146, 147 (D. Md. 1988). Other courts, however, held that § 7502 did not preempt the common-law presumption of delivery by proof of mailing, and extrinsic evidence could be used to show timely filing. *See, e.g.*, *Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 151 (3d Cir. 2008); *Lee Brick and Tile v. United States*, 132 F.R.D. 414, 419 (M.D.N.C. 1990).

18

The Treasury Department subsequently issued a regulation to address the different interpretations of § 7502. Treas. Reg. § 301.7502-1 was published in 2011 and made applicable to documents postmarked after September 21, 2004. 76 FR 52561-01 (August 23, 2011). It provides, with respect to a document that is mailed, as follows:

> (i) Registered and certified mail. In the case of a document (but not a payment) sent by registered or certified mail, proof that the document was properly registered or that a postmarked certified mail sender's receipt was properly issued and that the envelope was properly addressed to the agency, officer, or office constitutes prima facie evidence that the document was delivered to the agency, officer, or office. Other than direct proof of actual delivery, proof of proper use of registered or certified mail, and proof of proper use of a duly designated PDS [private delivery service] as provided for by paragraph (e)(2)(ii) of this section, are the exclusive means to establish prima facie evidence of delivery of a document to the agency, officer, or office with which the document is required to be filed. No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.

26 C.F.R. § 301.7502-1(e)(2)(i). As the Comptroller notes, this regulation indicates that, unless a taxpayer has direct proof that a document was delivered to the IRS, the statute provides the sole means to prove delivery. *Id.* ("No other evidence of a postmark or of mailing will be prima facie evidence of delivery or raise a presumption that the document was delivered.").

In *Baldwin*, 921 F.3d at 842–44, the United States Court of Appeals for the Ninth Circuit addressed the validity of this regulation in circumstances similar to those in this case. In that case, the taxpayers claimed that they mailed their amended tax returns prior to the end of the limitations period, but the IRS stated that it never received the amended return. *Id.* at 839. The taxpayers subsequently sent another amended return, which the

19

IRS received outside of the limitations period. *Id.* The IRS determined that the amended return was not timely filed. *Id.*

The Baldwins offered testimony from their employees that they mailed the document on a certain date, and they argued that, under the common-law mailbox rule, if the court credited the testimony, it gave rise to a presumption that the return was delivered to the IRS by the deadline. *Id.* at 842. The district court credited the testimony and found, based on the common-law mailbox rule, that the refund claim had been timely filed. *Id.* The district court "viewed IRC § 7502 as unambiguously supplementing, rather than supplanting, the common-law mailbox rule, thus leaving no room for the agency to adopt the construction of the statute reflected in Treasury Regulation § 301.7502-1(e)(2)." *Id.*

The Ninth Circuit reversed. *Id.* at 844. The court noted that, in determining whether an agency construction of a statute is entitled to "*Chevron* deference," the court follows a two-step analysis under *Chevron, U.S.A., Inc. v. National Resource Defense Council, Inc.*, 467 U.S. 837 (1984).[4] First, it asks whether "Congress has directly spoken to the precise question at issue." *Id.* at 842 (quoting *Chevron*, 467 U.S. at 842). If the answer to that question is yes, "Congress' resolution of the issue controls and the agency is not free to adopt an interpretation at odds with the plain language of the statute." *Id.* If the statute is "silent or ambiguous" on the issue, the court asks "whether the agency's interpretation is

---

[4] The Supreme Court subsequently held that "*Chevron* deference" may apply to Treasury Department regulations interpreting the Internal Revenue Code if they are a "reasonable interpretation" of the statute. *Mayo Foundation for Medical Educ. & Research v. United States*, 562 U.S. 44, 58–59 (2011).

'based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843.)

Applying that analysis, the Ninth Circuit concluded that I.R.C. § 7502 "was silent as to whether the statute displaces the common-law mailbox rule." *Id.* It then turned to whether the Treasury Regulation was based on a permissible construction of the statute. *Id.* at 842–43. The court pointed to the split in court decisions in concluding that "IRC § 7502 could reasonably be construed in one of two ways: as intended merely to supplement the common-law mailbox rule, or to supplant it altogether." *Id.* at 843. The court held that the Treasury Department's adoption of the view that § 7502 provided the sole means to prove timely delivery in the absence of direct proof of actual delivery was a permissible construction of the statute, "even if another equally permissible construction of the statute could also be upheld." *Id.* at 843. Accordingly, pursuant to the deference given to an agency decision, it held that the regulation was valid. *Id.* at 843–44. Thus, the Ninth Circuit concluded that I.R.C. § 7502 and Treas. Reg. § 301.7502-1(e)(2)(i) had eliminated the common-law mailbox rule with respect to proof of timely filing of federal tax claims. *Accord McBrady v. United States*, 167 F.Supp.3d 1013, 1017 (D. Minn. 2016) ("The Court perceives no reason why it should not defer, under *Chevron* . . . to these regulations as reasonable interpretations of § 7502, especially because Congress expressly delegated to the Secretary of the Treasury the authority to regulate in this area.").

The parties do not cite any other cases that have addressed the validity of Treas. Reg. § 301.7502-1(e)(2)(i) and its impact on I.R.C. § 7502. Some courts, however, continue to refer to the issue as unsettled or involving a split in the circuits. *See, e.g.*, *Maine*

21

*Med. Ctr.*, 675 F.3d at 114 n.8 (The First Circuit noted the split among the circuits as to whether § 7502 "supplants the common law mailbox rule," but stated that, because the regulation was not necessary to its holding, the court would "leave to another day the decision of whether we will give [it] *Chevron* deference."). *Accord Boudreau v. United States*, 622 B.R. 817, 828 (B.A.P. 1st Cir. 2020) (noting that the First Circuit had "not decided whether IRC § 7502 provides the exclusive method by which a taxpayer may prove timely mailing of a tax return to the IRS").

We note that Oregon has a statute similar to TG § 10-107, in that it directs the Department of Revenue, "[i]nsofar as is practical," to apply administrative and judicial interpretations of the federal income tax law. Or. Rev. Stat. ("ORS") § 316.032(2) (2019). That statute goes on to give guidance to the Department when there is not a uniform view regarding federal law. ORS § 316.032(2) provides: "When a provision of the federal income tax law is the subject of conflicting opinions by two or more federal courts, the department shall follow the rule observed by the United States Commissioner of Internal Revenue until the conflict is resolved." Maryland's statute does not contain a similar provision.

Despite the lack of definitive federal law regarding whether § 7502 supersedes the common-law mailbox rule, we agree with the analysis set forth by the Ninth Circuit in *Baldwin*. We conclude that Treas. Reg. § 301.7502-1 is a valid regulation, and pursuant to federal law, when a refund request is mailed, but the Comptroller denies that he received it, a taxpayer can show timely filing only through a receipt of registered mail, or other methods set forth in the regulation.

22

## 2.

## Federal Law Applies if "Inextricably Keyed" to Maryland Law

The next question is whether the Maryland Tax Court was bound by this federal law. The Comptroller's argument that he was bound by that law involves several steps.

Initially, as indicated, the Comptroller notes that TG § 10-107 requires that, "[t]o the extent practicable, [he] shall apply the administrative and judicial interpretations of the federal income tax law to the administration of the income tax laws of this State." He acknowledges that TG § 10-107 "is not a direct authorization to . . . incorporate into the Maryland tax code whatever I.R.C. provisions it sees fit to apply," but rather, the statute applies only "where the Maryland tax code is 'inextricably keyed' to the federal tax code by virtue of its adoption of federal law." *Comptroller of the Treasury v. Gannett Co., Inc.*, 356 Md. 699, 720 (1999) (quoting *Lyon v. Campbell*, 324 Md. 178, 185 (1991)).

The Comptroller argues that the Maryland law regarding limitations on filing a refund request, TG § 13-1104(c), is "inextricably keyed" to I.R.C. § 6511 by its specific reference to it. Therefore, he asserts, application of TG § 13-1104(c) requires application of administrative and judicial interpretations of I.R.C. § 6511, including Treas. Reg. § 301.7502-1, which links I.R.C. § 7502 to I.R.C. § 6511 and provides that, where the taxing authority does not acknowledge receipt of a return, a registered mail receipt or other methods set forth in the statute, are the exclusive methods of establishing a timely filing.

Appellees contend that I.R.C. § 7502 is not incorporated into TG § 13-1104 because it is "not inextricably keyed to Maryland evidentiary law." They assert that "[w]hether the IRS has instituted a specific evidentiary standard is not relevant when it comes to Maryland

23

law." Appellees contend that the Tax Court properly reviewed the totality of the evidence, applied Maryland law adopting the common-law mailbox rule, and "without any doubt," found that appellees filed their refund claims in a timely fashion.

The Court of Appeals has addressed the directive in TG § 10-107 that the Comptroller, to the extent practicable, "apply the administrative and judicial interpretations of the federal income tax law to the administration of the income tax laws of this State," on several occasions. In *Lyon*, 324 Md. at 185, the Court stated that TG § 10-107 applies only "where the Maryland tax code is inextricably keyed to the federal tax code by virtue of its adoption of the federal law." (Cleaned up.) The statute does not grant the Comptroller sweeping power or authority:

> Section 10-107 is not a direct authorization for [the Comptroller] to incorporate into the Maryland tax code whatever I.R.C. provisions it sees fit to apply; rather, section 10-107 expresses a policy of comity that, when exercising any legislatively-authorized powers that parallel an I.R.C. provision, [the Comptroller] must comply with the judicial and administrative interpretations of that federal statute. . . .
>
> *            *            *
>
> Section 10-107 does not grant any authority to [the Comptroller]. The statute merely states that, when [the Comptroller] is specifically empowered to enforce an I.R.C. provision, it must obey the previous administrative and judicial interpretations of the tax law at issue as precedent. The statute does not allow [the Comptroller] to put forth its own interpretation that a federal tax law is incorporated into the Maryland tax code.

*Gannett*, 356 Md. at 720–21.

Here, TG § 13-1104, in setting forth the limitations period to file a claim for a refund, specifically incorporates I.R.C. § 6511, stating that a claim for a refund may not be filed after the limitations "set forth in § 6511." TG § 13-1104(c). Thus, TG § 10-107

24

requires the Comptroller to follow the administrative and judicial interpretations of I.R.C § 6511, including: (1) Treas. Reg. § 301.7502-1(b)(2), which provides that § 7502 "is applicable to the determination of whether a claim for credit or refund is timely filed for purposes of section 6511(a)"; and (2) § 301.7502-1(e)(2)(i), which provides that, unless the taxpayer has direct proof that a document was delivered to the IRS, proof of registered or certified mail, or use of a certified private delivery service, is the sole means to prove delivery.

In *Diebold*, 279 Md. at 409, the Court of Appeals held that limitations under Maryland law should be calculated in the manner prescribed by I.R.C. § 6511(a) to avoid "the anomalous result that a refund of U.S. income taxes might [not] necessarily produce a refund of Maryland income tax." Thus, when the Comptroller determines whether there has been a timely filing under TG § 13-1104(c), and when a court reviews whether the Comptroller's decision in this regard was proper, we look to the limitations period of I.R.C. § 6511(a), i.e., whether the taxpayer *filed* amended returns "within 3 years from the time the [original] return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." Treas. Reg. § 301.7502-1 provides an administrative interpretation regarding how to determine if documents were timely filed pursuant to I.R.C. § 6511 and I.R.C. § 7502. These federal provisions are "inextricably keyed" to interpretation of timely filing pursuant to TG § 13-1104(c). Accordingly, the Comptroller and the Tax Court were required to follow federal law in this regard.

## D.

## Conclusion

Maryland's income tax law should be construed consistent with federal law "to which it is inextricably keyed." *Diebold*, 279 Md. at 408. The limitations period in TG § 13-1104(c) is inextricably keyed to I.R.C. § 6511(a), and the Comptroller and Tax Court must apply the administrative and judicial interpretations of I.R.C. § 6511(a), including Treas. Reg. § 301.7502-1 and I.R.C. § 7502. Accordingly, in a situation where a taxpayer mails a claim for a refund, but the Comptroller does not receive the claim within the limitations period, the taxpayer can show timely filing only by a receipt of registered mail or other proof permitted pursuant to Treas. Reg. § 301.7502-1 and I.R.C. § 7502.

Here, appellees did not have evidence of timely filing based on a receipt of registered mail, and the Tax Court allowed appellees to testify regarding mailing within the limitations period. It then applied the common-law mailbox rule to find that the amended returns were timely filed. In so ruling, the Tax Court erred as a matter of law. The circuit court then erred in affirming the Tax Court's ruling in this regard.

## II.

## Summary Judgment

## A.

## Parties' Contentions

The Comptroller next contends that the Tax Court erred when it failed to grant his motion for summary judgment. In support, he argues that appellees failed to file proper affidavits to contradict his claims, and therefore, they "admitted for purposes of summary

26

judgment" that they filed the amended returns after the period to claim refunds had expired. The Comptroller asserts that, under these circumstances, the "Tax Court should have awarded summary judgment, by default, to the Comptroller."

Appellees contend that the Comptroller's argument is without merit. They assert that the Tax Court was not required to follow the affidavit requirements set forth in the Maryland Rules of Procedure, and the court properly exercised its discretion in denying the Comptroller's motion for summary judgment.[5]

**B.**

**Analysis**

Although, given our resolution of the first issue, we need not address this issue, we will do so briefly. This Court previously has set forth the standard of review involving a motion for summary judgment as follows:

> A trial court may "enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any

---

[5] Maryland Rule 2-501 provides, in pertinent part, as follows:

(b) A response to a motion for summary judgment shall be in writing and shall (1) identify with particularity each material fact as to which it is contended that there is a genuine dispute and (2) as to each such fact, identify and attach the relevant portion of the specific document, discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute. A response asserting the existence of a material fact or controverting any fact contained in the record shall be supported by an affidavit or other written statement under oath.

(c) An affidavit supporting or opposing a motion for summary judgment shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.

27

material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(f). Although a trial court's decision to grant a motion for summary judgment is subject to *de novo* review on appeal, *see Harford County v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 82, 923 A.2d 1 (2007) (citing *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 478, 914 A.2d 735 (2007)), a trial court has discretionary authority to *deny* a motion for summary judgment in favor of a full hearing on the merits, even when the moving party "has met the technical requirements of summary judgment." *Dashiell v. Meeks*, 396 Md. 149, 164–65, 913 A.2d 10 (2006) (citations omitted). "Thus, on appeal, the standard of review for a denial of a motion for summary judgment is whether the trial judge abused his [or her] discretion and in the absence of such a showing, the decision of the trial judge will not be disturbed." *Id.* (citations omitted). *See also Bouton v. Potomac Edison Co.*, 288 Md. 305, 311, 418 A.2d 1168 (1980) ("on appeal from a final judgment entered following a full trial of the general issue, we would not review a pretrial denial of a motion for summary judgment, other than for an abuse of discretions") (citing *Metro. Mortgage Fund v. Basiliko*, 288 Md. 25, 28–29, 415 A.2d 582 (1980)).

*Fischbach v. Fischbach*, 187 Md. App. 61, 75 (2009).

Accordingly, we review the Tax Court's denial of the motion for summary judgment, "in favor of a full hearing on the merits," for an abuse of discretion. *Id.* An abuse of discretion occurs when "the discretion was 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons,' or when 'no reasonable person would take the view adopted by the [trial] court.'" *Wilson-X v. Dep't of Hum. Res.*, 403 Md. 667, 677 (2008) (quoting *Schade v. Maryland State Bd. of Elections*, 401 Md. 1, 34 (2007)). As explained below, we conclude that there was no abuse of discretion here.

The Comptroller argues that the Tax Court erred in denying its motion for summary judgment based on appellees' failure to comply with Maryland Rule 2-501. Title 2 of the Maryland Rules, however, "applies to civil matters in the circuit courts." Md. Rule 1-101(b). Both COMAR 14.12.01.11 ("Rule 11") and TG § 13-523 provide that proceedings

28

in the Tax Court "shall be conducted in a manner similar to" a circuit court. The term similar, however, does not mean identical.[6]

Given the inapplicability of Maryland Rule 2-501 to the proceedings here, the Tax Court was not required to grant summary judgment to the Comptroller based on any violation of Maryland Rule 2-501. The Tax Court, after receiving the Comptroller's motion for summary judgment, and several replies from both appellees and the Comptroller, reserved on the issue and set the matter for a trial on the merits. The Tax Court wanted a complete factual record to determine whether appellees timely mailed their amended returns requesting refunds. We perceive no abuse of discretion in the ruling in this regard.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT TO REMAND TO THE TAX COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**

---

[6] As the Court of Appeals has explained:

> The word "similar" does not mean identical but that which resembles. Webster defines it as "like; resembling; having a general resemblance but not exactly the same." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY, 2d ed. at 1691. Ultimately, of course, similarity is determined by comparing the two laws and making some judgment regarding any variances between them. A departure that is relatively minor or that simply accounts for a local context that is different from the State context does not preclude a finding of similarity.

*Seipp v. Balt. City Bd. of Elections*, 377 Md. 362, 373–74 (2003).

29