**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-1537**

STEPHEN K. POND,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

Appeal from the United States District Court for the Middle District of North Carolina at Greensboro. Loretta C. Biggs, District Judge. (1:21-cv-00083-LCB-LPA)

Argued: January 26, 2023                    Decided: May 26, 2023

Before KING and RICHARDSON, Circuit Judges, and MOTZ, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Richardson wrote the opinion, in which Judge King and Senior Judge Motz joined.

**ARGUED:** James Conrad Adams, II, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellant. Robert Joseph Wille, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Daniel L. Colston, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina, for Appellant. David A. Hubbert, Deputy Assistant Attorney General, Nathaniel S. Pollock, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sandra J. Hairston, United

States Attorney, OFFICE OF THE UNITED STATES OF ATTORNEY, Greensboro, North Carolina, for Appellee.

RICHARDSON, Circuit Judge:

Stephen Pond is a taxpayer seeking a refund on his 2013 taxes. The IRS audited Pond's business and revealed an alleged overpayment. But the IRS misinterpreted its own audit, concluding that Pond had underpaid. So the IRS told Pond that he owed more taxes. He paid up, including interest. Only later did Pond's accountant discover the IRS's mistake. Properly understood, the audit revealed that Pond had *overpaid*. So Pond timely requested a refund on his 2012 taxes. He says that, at the same time and in the same envelope, he also requested a refund on his 2013 taxes because the 2012 error caused him to also pay too much in 2013. The IRS gave Pond a refund for 2012. But the IRS says that it did not receive a timely refund request for the 2013 tax year. And suits seeking to force the government to issue a refund are barred by sovereign immunity unless the plaintiff first files a timely request. So the government argues that we lack jurisdiction over the claim.

Pond disagrees. In seeking to force the IRS to pay the 2013 refund, he argues that: (1) he is entitled to a presumption of timely delivery under the common-law mailbox rule, and (2) even without a presumption, he plausibly alleged timely physical delivery of his request. The district court sided with the government, holding that: (1) Pond cannot rely on the common-law mailbox rule because 26 U.S.C. § 7502—which creates a statutory mailbox rule for tax filings—supplants the common-law rule, and (2) Pond did not plausibly allege physical delivery.

We now affirm in part, vacate in part, and remand for further proceedings. Pond cannot rely on a presumption of delivery. He does not satisfy § 7502's statutory requirements, so he cannot invoke its mailbox rule. And § 7502 "'speak[s] directly' to the

3

question addressed by the common law," so it displaces any common-law mailbox rule. *See United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)). But Pond did plausibly allege actual physical delivery. So his claim survives the government's motion to dismiss and may proceed.

## I.      Background

In 2017, the IRS audited the 2012 tax returns for a business that Pond had invested in. Based on what they found, the IRS erroneously issued a Notice of Computational Adjustment, increasing Pond's taxable income for 2012.[1] Under the adjustment, Pond owed additional taxes and interest for that year. He promptly paid.

After paying, Pond's accountant discovered the IRS's error. Correcting for the error, Pond was entitled to a refund on his 2012 taxes and of the interest he had paid. The discovery also meant that Pond reported more taxable income than he should have for 2013 and, as a result, paid too much in taxes. So he was entitled to a refund for that year as well. Pond thus requested a refund (1) on his 2012 taxes, (2) on his 2013 taxes, and (3) of the interest he had paid on the 2012 back payments. To request the refund on the taxes for both years, Pond says that he sent separate forms *in a single envelope* via first-class mail to an IRS center in Holtsville, New York in July 2017. Around the same time, to request

---

[1] The specifics: On his 2012 tax return, Pond reported $448,791 of income from the business allocated to him individually, and $477,816 of income allocated to him as the owner of an irrevocable trust. The audit revealed that Pond overstated his income from the business for 2012. He should have reported only $187,028 personally and the same amount as the owner of the trust. The IRS—rather than recalculating Pond's taxes based on the reduced income—mistakenly *added* the $187,028 to the income amounts Pond originally reported. Based on the decrease in his 2012 taxable income—and the resulting increase in loss carryforwards—Pond argues he is entitled to a $145,894 refund for the 2013 tax year.

the refund of the interest, Pond sent a form to an IRS center in Covington, Kentucky, which forwarded the request to an IRS center in Andover, Massachusetts.

What followed was a series of communications with the IRS that resulted in Pond getting a refund on his 2012 taxes and of the interest he paid, but not on his 2013 taxes.

Pond first heard back from IRS Andover in September about his interest-refund request:  They had received his request but wanted a copy of his refund claim for the 2012 taxes to confirm that he was entitled to the interest refund.  Pond responded on October 3 that he had sent his original request for a tax refund to IRS Holtsville.  But to be helpful— and "out of an abundance of caution"—he forwarded a duplicate copy of his 2012 tax-refund request to IRS Andover.  J.A. 9.  Three weeks later, on October 26, 2017, the statutory period to claim a refund ended.[2]

After another few weeks, Pond heard from IRS Andover again.  They claimed to have shared Pond's 2012 tax-refund claim with IRS Holtsville and that someone from Holtsville would contact Pond about his claim.  Several months passed and Pond heard

---

[2] Pond now argues that, because the business elected to be taxed as a partnership, he was not required under 26 U.S.C. § 6230(d)(5) to submit a claim because "[i]n the case of any overpayment by a partner which is attributable to a partnership item . . . and which may be refunded under this subchapter, *to the extent practicable credit or refund of such overpayment shall be allowed or made without any requirement that the partner file a claim therefor*."  *See* Appellant's Br. at 16 (emphasis added).  The government responds that § 6230(d)(5) gives them the authority to issue a refund without a claim to the extent practicable but, where they do not sua sponte issue a refund, the section does not create an exception to § 7422(a)'s jurisdictional requirement.  Perhaps.  But because Pond makes this argument for the first time on appeal, the issue is waived and we need not decide it. *See Bell v. Brockett*, 922 F.3d 502, 513 (4th Cir. 2019).

nothing.    Then, in March 2018—without further contact from IRS Holtsville—Pond received a refund for the 2012 tax year, including interest.

Sometime later, having heard nothing about his 2013 claim, he again contacted the IRS about it.  At that time, agents at the IRS "attempting to locate the 2013 Form 1040X were unable to find it anywhere on the IRS's system."  J.A. 10.  So Pond sent a duplicate copy of his 2013 claim to IRS Holtsville.  Time passed.  Again, Pond heard nothing.  So Pond contacted IRS Holtsville and learned that his claim had been "processed … and assigned to an agent."  J.A. 10.  They "promised" Pond would hear something from the agent.  J.A. 10.

More months went by, and Pond still heard nothing.  When he once again contacted IRS Holtsville, Pond learned that his 2013 claim had been closed with no refund issued.  Although the claim had been closed, the agent at IRS Holtsville could not locate a copy of the claim on the IRS's system, so Pond faxed a third copy directly to the agent.

A couple of weeks later, Pond received a Notice of Denial informing him that his 2013 refund claim was denied because the statute of limitations had run.  The denial letter listed the "[d]ate of claims received" as July 17, 2017.  J.A. 84.

Pond filed a formal protest of the denial with IRS Holtsville.  He got no response, so he contacted the office and learned that his protest had not been processed.  So he tried to go to the higher-ups.  He filed a protest with the IRS's Office of Appeals.  But the Office of Appeals returned his protest and told Pond that he did not "have a case pending in the Office of Appeals," effectively sending him back to IRS Holtsville.  J.A. 12.

6

Having had enough, Pond filed an action in federal court for a tax refund. The government moved to dismiss under Rule 12(b)(1), arguing they were entitled to sovereign immunity because the refund claim was not timely filed. The district court found that Pond did not timely claim a tax refund and dismissed his claim for lack of jurisdiction. Pond timely appealed.

We have jurisdiction to review the district court's final order under 28 U.S.C. § 1291. In doing so, we review the dismissal for lack of jurisdiction de novo. *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013). We "assume all well-pled facts to be true" and "draw all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd., v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (cleaned up); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (where defendant argues "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based . . . the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.").

## II.   Discussion

We must decide whether Pond adequately alleged that he timely filed his 2013 refund claim with the IRS. If he did not, then the district court was correct that it lacked jurisdiction over his case. That is because he is suing the United States, which, "as sovereign, is immune from suit unless it waives that immunity." *Webb v. United States*, 66 F.3d 691, 693 (4th Cir. 1995). True, Congress has partially waived that immunity to give district courts jurisdiction over suits to recover erroneous federal tax assessments. *See* 28 U.S.C. § 1346(a)(1); *United States v. Dalm*, 494 U.S. 596, 601–602, 607–08 (1990).

7

But that waiver is limited. Congress has also said: "No suit . . . shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously . . . assessed . . . *until a claim for refund* . . . has been *duly filed*." 26 U.S.C. § 7422(a) (emphasis added); *see Webb*, 66 F.3d at 693. For a claim to be "filed," it must be delivered. *See United States v. Lombardo*, 241 U.S. 73, 76 (1916). And for it to be "duly" filed, that delivery must be timely. *See Dalm*, 494 U.S. at 602.

During the relevant period, a refund claim was timely if filed "within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." *See* 26 U.S.C. § 6230(c)(2)(A) (2016).[3] The IRS sent Pond a Notice of Computation Adjustment on April 26, 2017. He was therefore required to file his claim by October 26, 2017, to benefit from the sovereign-immunity waiver. Pond says that he complied with this requirement, and that he sent his refund claim via first-class mail postmarked July 18, 2017. But the IRS says that they have no record of that claim. So Pond must—at this stage—either show that he (1) can rely on a presumption of delivery or (2) plausibly alleged physical delivery.

## A.      Presumption of Delivery

The parties disagree as to whether Pond can rely on a presumption of delivery under the common-law mailbox rule. Pond argues that he can. We hold otherwise. For

---

[3] Section 6230 was one piece of the Tax Equity and Fiscal Responsibility Act that was repealed by the Bipartisan Budget Act of 2015, which changed partnership taxation. *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101(a), (g), 129 Stat. 584, 625, 638 (2015). The repeal is only effective for tax years beginning after December 21, 2017, *see id.* § 1101(g)(1), so § 6230 provides the applicable deadlines for Pond's 2013 claim.

taxpayers, the common-law rule has been supplanted by a statutory one. And the statutory mailbox rule is narrower than the common-law rule: it only protects those who send their documents by registered or certified mail. Because Pond does not meet that statutory requirement,[4] he cannot rely on a presumption of delivery to show timely filing.

### 1.    The common-law and statutory presumptions of delivery

In general, the only way to satisfy a statutory filing requirement is physical delivery. *See Lombardo*, 241 U.S. at 76 ("Filing . . . is not complete until the document is delivered and received."). This is known as the physical-delivery rule. But, when a person tries to deliver a document by mail, the physical-delivery rule leaves the filer "vulnerable to the vagaries of the postal service; documents could be delayed or not delivered at all through no fault of the [filer]." *United States v. Baldwin*, 921 F.3d 836, 840 (9th Cir. 2019). To soften these harsh effects, courts created a mailbox rule: "if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed . . . that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884); *see also FDIC v. Schaffer*, 731 F.2d 1134, 1136 n.6 (4th Cir. 1984) ("A letter properly addressed, stamped and mailed is presumed to have been duly delivered to the addressee." (quoting *McCormick's Handbook of the Law of Evidence* § 343 (1972))).

---

[4] Pond agrees that, because he sent his claim via first-class mail, rather than registered or certified mail, he cannot avail himself of the statutory mailbox rule providing a presumption of delivery.

To be more precise, when courts refer to the "mailbox rule," they are often talking about one of two distinct—but related—presumptions. The narrower presumption is merely of timeliness, not delivery. In other words, if a filer can show that the document was actually delivered, but can't pinpoint precisely when that happened, then this narrower version of the mailbox rule would allow a court to presume that "physical delivery occurred in the ordinary time after mailing." *Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 147 (3d Cir. 2008); *see also id.* ("[T]he mailbox rule is merely a method for determining the date of physical delivery under the 'physical delivery' rule. It does not ignore the physical delivery requirement."); *Me. Med. Center v. United States*, 675 F.3d 110, 114 (1st Cir. 2012).

The broader presumption is of physical delivery. Courts adopting this version of the mailbox rule say that "proof of proper mailing—including by testimonial or circumstantial evidence—gives rise to a rebuttable presumption that the document was physically delivered to the addressee in the time such a mailing would ordinarily take to arrive." *Baldwin*, 921 F.3d at 840; *see also Detroit Auto. Prod. Corp. v. Comm'r*, 203 F.2d 785, 785 (6th Cir. 1953) ("[W]hen mail matter is properly addressed and deposited in the United States mails, with postage thereon duly prepared, there is a rebuttable presumption of fact that it was received by the addressee in the ordinary course of mail.").

Courts began applying their varying versions of the mailbox rule to documents taxpayers mailed to the IRS. *See, e.g.*, *Ark. Motor Coaches, Ltd. v. Comm'r*, 198 F.2d 189, 191 (8th Cir. 1952); *Detroit Auto.*, 203 F.2d at 785–786. Against this backdrop, in 1954 Congress enacted 26 U.S.C. § 7502, a uniform statutory mailbox rule for tax filings. The

10

statute provides two presumptions that mirror the two common-law mailbox rule presumptions.

First, § 7502(a) creates the narrower presumption of timeliness:  any filing sent by U.S. Mail that is received after a deadline will still be treated as timely if postmarked before the deadline.  *See* § 7502(a).[5]  So § 7502(a) means that a document sent by U.S. mail is "duly filed" "so long as two things are true:  (1) the document is actually delivered to the IRS, even if after the deadline; and (2) the document is postmarked on or before the deadline." *Baldwin*, 921 F.3d at 840.  But "by its terms," § 7502(a) does nothing if "the document is never delivered at all." *Id.*

The second, broader presumption of *delivery* is found in § 7502(c), which provides that registration serves as prima facie evidence of delivery for filings sent by registered or certified mail.  *See* § 7502(c).[6]  Any statutory presumption of *delivery* must come from

---

[5] Section 7502(a)'s presumption of timeliness provides:

> If any return . . . required to be filed . . . on or before a prescribed date under authority of any provision of the internal revenue laws *is*, after such period or such date, *delivered* by United States mail to the agency, officer, or office with which such return . . . is required to be filed, . . . the date of the United States postmark stamped on the cover in which such return . . . is mailed shall be deemed to be the *date of delivery*.

§ 7502(a)(1) (emphasis added).

[6] Section 7502(c)(1) provides presumptions only for registered mail.  *See* § 7502(c)(1)(A).  But § 7502(c)(2) authorizes the Secretary of the Department of the Treasury to "provide by regulations the extent to which" § 7502(c)(1)'s presumption "shall apply to certified mail and electronic mail."  § 7502(c)(2).  Using that authority, the Secretary extended the presumptions of timeliness and delivery to certified mail and the presumption of timeliness to electronic mail.  *See* 26 C.F.R. § 301.7502-1(c)(2), (d)(1).

11

§ 7502(c).    And that subsection only provides a delivery presumption when using registered or certified mail.[7]  Its presumption of delivery does not extend to first-class mail; only to registered or certified mail.  As Pond chose to send his refund requests by first-class mail—not by registered or certified mail—§ 7502(c)'s presumption of delivery does not help him.

Even so, Pond argues, he should get the benefit of the common-law mailbox rule, which would provide a presumption of delivery for any mailing, including first-class mail. May a taxpayer invoke the preexisting common-law mailbox rule now that Congress enacted the new statutory mailbox rule in § 7502?  The answer depends on whether the statute merely supplements the common-law mailbox rule or else supplants it altogether. And the courts of appeals have split on the question.  The Second and Sixth Circuits both

---

[7] Section 7502(c)'s presumption of delivery provides:

> (1) Registered mail.--For purposes of this section, if any return, claim, statement, or other document, or payment, is sent by United States *registered mail*--
>
> > (A) such registration shall be prima facie evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
> >
> > (B) the date of registration shall be deemed the postmark date.
>
> (2) Certified mail; electronic filing.--The Secretary is authorized to provide by regulations the extent to which the provisions of paragraph (1) with respect to prima facie evidence of delivery and the postmark date shall apply to *certified mail* and electronic filing.

§ 7502(c) (emphasis added).  As discussed above, the Secretary exercised its statutory authority under § 7502(c) to extend the presumption of delivery to certified mail. *See* 26 C.F.R. § 301.7502-1(c)(2).

12

say that the statute supplanted the common-law rule.  *See Miller v. United States*, 784 F.2d 728, 731 (6th Cir. 1986); *Deutsch v. Comm'r*, 599 F.2d 44, 46 (2d Cir. 1979).  The Eighth and Tenth Circuits, however, both say the statute merely supplemented the common-law rule.  *See Sorrentino v. IRS*, 383 F.3d 1187, 1193–94 (10th Cir. 2004); *Est. of Wood v. Comm'r*, 909 F.2d 1155, 1160–61 (8th Cir. 1990).[8]  We agree with the Second and Sixth Circuits that the statute has supplanted the common-law rule.

### 2.      Section 7502 supplants the common-law presumption of delivery

When a federal statute invades an area occupied by federal common law, we generally presume the statute does not change the established common law.  *United States v. Texas*, 507 U.S. 529, 534 (1993).[9]  This presumption favors "the retention of long-established and familiar principles."  *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783

---

[8] To try to resolve this split, the Treasury Department promulgated a regulation that interprets § 7502 to fully supplant the common-law mailbox rule.  *See* 26 C.F.R. § 301.7502-1(e); *see also Baldwin*, 921 F.3d at 842–43.  The government asks that we defer to that interpretation.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  But we need not give the agency's interpretation of § 7502 any deference, because the statute is not "genuinely ambiguous."  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019); *see also Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2291 n.9 (2021).

[9] Two related ideas exist about how the common law informs our understanding of statutes.  First, there is a statutory interpretation canon that suggests we should strictly construe statutes in derogation of the common law.  3 *Sutherland Statutory Construction* § 61.1 (8th ed. 2022).  And a second canon suggests we impute the common-law meaning of common-law terms incorporated into a statute.  *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992) ("Where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." (cleaned up)).  Both canons help us understand statutory text.  But we need apply neither here as the meaning of § 7502 is clear.  We instead ask whether that clear meaning displaces, or supplants, the common-law mailbox rule.

(1952).[10]  But the presumption in favor of background principles may be overcome—and the common law supplanted—when "the language of a statute be clear and explicit for this purpose." *Fairfax's Devisee v. Hunter's Lessee*, 11 U.S. (7 Cranch) 603, 623 (1812); *see also Texas*, 507 U.S. at 534; *Isbrandtsen*, 343 U.S. at 783.[11]

Does this amount to a clear statement rule?  No, Congress need not attach an express disclaimer to a statute that "this statute hereby abrogates the common law."  *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("This interpretative presumption is not [ ] one that entails a requirement of clear statement, to the effect that Congress must state precisely any intention to overcome the presumption's application to a given statutory scheme."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 52 (2012) (a change in common law "need not be express").  Instead, evidence that the statute supplants the common law can be implied

---

[10] This presumption applies only to *well-established* background principles. *Pasquantino v. United States*, 544 U.S. 349, 359–60 (2005).  As we find the presumption overcome, we will assume the common-law mailbox rule is one such principle.

[11] The presumption that federal statutes do not supplant federal common law is just a species of the presumption against the repeal of prior laws by implication.  This presumption arises elsewhere.  For example, respecting prior Congresses means not lightly presuming that a later statute implicitly repeals an earlier one.  *See Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020).  Similarly, the presumption carries weight when we examine whether a federal statute supplants (we typically say preempts) a state law.  *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).  This application of the presumption accords "due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power."  *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 243 (1959).  Neither concern exists when we ask whether a federal statute supplants federal common law.  *Milwaukee v. Illinois*, 451 U.S. 304, 316–17 (1981).  But we still apply a presumption in favor of established background principles when those principles derive from federal common law.  *See Texas*, 507 U.S. at 534.

14

when the statute "'speaks directly' to the question addressed by the common law." *Texas*, 507 U.S. at 534 (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)).

The Court applied this principle in *Milwaukee v. Illinois*. 451 U.S. 304 (1981). There, Illinois sued under the federal common law of nuisance to stop the city of Milwaukee from discharging sewage into Lake Michigan. *Id.* at 308–10. Shortly after Illinois sued, Congress passed the Clean Water Act. *Id.* at 310. Because the Act was "an all-encompassing program of water pollution regulation," the Court held that the Act supplanted the common law nuisance remedy. *Id.* at 317. The Court reached this determination even though the Act neither "affirmatively proscribed the use of federal common law" nor unavoidably conflicted with more stringent limitations. *Id.* at 318, 320–23. It was enough that the Act "spoke directly" to the question of water pollution. *Id.* at 315, 317.

Likewise, § 7502 abrogates the common-law mailbox rule because the Act "speaks directly" to the same question as the common-law rule. *Texas*, 507 U.S. at 534. Section 7502 mirrors the two presumptions that the common-law rule afforded: the presumption of timeliness and the presumption of delivery. *See* § 7502(a), (c). In doing so it directly addresses the common-law rule's question. For taxpayers, § 7502 provides a complete, if slightly narrower, set of mailbox presumptions. And that supplants the common law without the need for an express statement or unavoidable conflict. *See Milwaukee*, 451 U.S. at 319–20 (noting that when a statute thoroughly addresses an issue, "there is no basis for a federal court to impose more stringent limitations . . . by reference to federal common law"); *Gardner v. Collins*, 27 U.S. 58, 93 (1829) (explaining that a court cannot "resort to

15

the common law" when the statute does not contain "a causus omissus; but a complete scheme").

In short, Pond cannot resort to the common-law presumption of delivery. He must proceed under the statute. And § 7502 makes clear when the presumption of delivery can apply to a taxpayer filing: certified and registered mailings. *See* § 7502(c). Because Pond did not send his 2013 refund claim by certified or registered mail, he does not satisfy the statute's requirements. Thus, he is not entitled to a presumption of delivery.[12]

## B.      Physical Delivery

Is Pond out of luck just because he cannot rely on a *presumption* of delivery? No. He can still proceed if he has plausibly alleged that his claim was physically delivered to the IRS. The district court held that Pond "is unable to show" physical delivery and that his allegations of physical delivery are "implausible." *Pond v. United States*, No. 1:21CV83, 2022 WL 1105031, at *6–7 (M.D.N.C. Apr. 13, 2022). We disagree. Affording the complaint all reasonable inferences, Pond adequately alleged physical delivery. So his claim survives the government's motion to dismiss.

The complaint directly alleges the 2013 claim was "physically delivered to the IRS service center in Holtsville, New York, in accordance with standard postal delivery practices and in accordance with IRS guidelines." J.A. 7. The government argues that this

---

[12] As we will see, Pond may still be able to show delivery actually occurred. If he is able to do so, then he may be able to rely on the presumption of timeliness in § 7502(a). Imagine discovery reveals that the 2013 claim was postmarked July 18, 2017, and is in the IRS's possession. To prove that claim was timely filed, Pond could rely on § 7502(a) to "deem[ ]" the claim filed on July 18, 2017, well before the October 2017 deadline. § 7502(a)(1).

16

is a "mere conclusory and speculative allegation[ ]." Government Br. at 20–21 (citing *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013)). Perhaps, but Pond elsewhere supported this conclusion with three factual allegations. These well-pled factual allegations—and their resulting inferences—make physical delivery plausible.[13]

First, Pond alleged that the envelope containing the 2013 claim "was postmarked with a date of July 18, 2017[.]" J.A. 7. The fact that the document was postmarked for delivery—which we accept as true—suggests that the document made it to its destination. This is the very idea underlying the presumptions of delivery: we can expect the U.S. Postal Service to do its job with some reliability. But if we allowed an allegation of a postmark alone to suffice for showing physical delivery, then that would effectively afford a "backdoor" presumption of delivery. So Pond must show more.

Second, Pond alleged that his 2012 and 2013 claims were sent in a single envelope. The 2012 claim was paid. A reasonable inference from the fact that the IRS paid Pond's 2012 claim is that they timely received it at IRS Holtsville. If both the 2012 claim and the 2013 claim were in the same envelope, then another reasonable inference is that IRS Holtsville received Pond's 2013 claim at the same time.

True, there are other possibilities. The IRS might have refunded Pond his 2012 overpayment without a filed claim. *See* § 6230(d)(5). Or the IRS may have paid Pond's

---

[13] Pond also seeks to create an inference based on allegations that the IRS lost other documents he mailed. He argues these other lost documents "give rise to a plausible inference that Pond's 2013 Amended Return was also lost or destroyed after it arrived." Appellant's Br. at 12–13. Not so. That is too large a leap to be a reasonable inference. *See Koon v. North Carolina*, 50 F.4th 398, 409 (4th Cir. 2022) ("[W]e must reject tenuous inferences that rest upon speculation and conjecture.").

2012 claim based on a duplicate copy of the claim that he sent to IRS Andover in connection with his requested interest refund.[14]  These other possible scenarios show that Pond's preferred inference—that IRS Holtsville received the envelope with Pond's 2012 and 2013 claims—is far from certain.  But the plausibility standard is not a "probability requirement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  We are required to draw all factual inferences in Pond's favor, so long as they are "reasonable." *See Nemet Chevrolet*, 591 F.3d at 253.  Notwithstanding other possibilities, one reasonable inference is that IRS Holtsville received Pond's envelope.  And that inference would support a plausible claim.

Third, Pond alleged that the letter he received from the IRS denying his 2013 claim listed the "date of claims received" as July 17, 2017.  J.A. 11.  We cannot ignore—in deciding whether Pond plausibly alleged timely filing—that the IRS itself prepared a document listing a timely date as the "[d]ate of claims received."  J.A. 84.

The government responds to this last point with a great deal of hand-waving.  It says that, under Pond's own narrative, the claims could not have been delivered by July 17, 2017.  After all, Pond alleged that, while he signed the refund claims on July 17, 2017, he did not place them in the mail until a day later, July 18, 2017.  A letter cannot arrive a day before it was sent.  *But cf.* Stephen W. Hawking, *A Briefer History of Time* (2008)

---

[14] Recall that Pond sent his tax-refund requests and his interest-refund request to separate IRS offices.  He first heard back from IRS Andover, the interest-refund office. They had received his request but needed a copy of the 2012 tax-refund request to confirm he was entitled to an interest refund.  Pond obliged and sent a duplicate of his 2012 tax-refund request to IRS Andover by letter on October 3.  IRS Andover acknowledged receipt by letter on November 13, and indicated they were "sending" Pond's 2012 tax-refund request to IRS Holtsville, which could "best process [his] request."  J.A. 9.

(explaining when it might be possible to arrive at your destination before departing). So, the government claims, the IRS obviously put the wrong date on the letter. It was a simple mistake. The government even offers an explanation: The agent who authored the denial letter was surely referencing a later copy of the 2013 claim that Pond faxed over, well after the deadline.

Maybe so. But just because the IRS used the wrong date does not mean that they never received a timely copy of Pond's 2013 claim. Perhaps the denial letter's author got the date from a subsequent fax. But it is also plausible that the letter's author got the date from the original—and timely—copy of the 2013 claim. And if that is the case, then the claim may well have been received before the deadline. As Pond notes, "given the comedy of errors by the Holtsville service center, using the date Pond signed his 2013 Amended Return as the date his claim was received would be the *least* egregious error committed by the IRS in this refund saga." Appellant's Br. at 18. In any event, at this stage we need not conduct a searching inquiry into *why* the IRS listed a timely "date of claims received." It just matters that they did so. Again, the plausibility standard is not a "probability requirement." *Iqbal*, 556 U.S. at 678.

This shows the error in dismissing his complaint at this stage. The district court reasoned that Pond "cannot show actual physical delivery or receipt by the IRS, since, according to the Complaint, the IRS has no record of receiving the return." *Pond*, 2022 WL 1105031, at *7. But this misreads Pond's complaint. It alleges that: "After inquiring again through counsel about the status of the 2013 refund, Plaintiff learned that the agents attempting to locate the 2013 Form 1040X *were unable to find it anywhere in the IRS's*

19

*system*." J.A. 10 (emphasis added). That some IRS agents could not locate Pond's claim on the system does not mean the IRS never received it, nor does it mean that the IRS actually has no records of its delivery. A more exhaustive effort during discovery could reveal something that the initial search missed. So this allegation is compatible with the IRS having record of timely filing. A denial letter listing a timely "date of claims received," is itself some evidence that his claim was timely filed. On remand, the government may produce evidence supporting their argument that the date they listed as "date of claims received" must have been a mistake. Or, to the contrary, discovery might unearth additional evidence that the 2013 claim was timely filed.

A court should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Here, the jurisdictional facts are in dispute. Pond plausibly alleges that he sent his 2012 and 2013 claims in a single envelope postmarked July 18, 2017. The IRS paid the 2012 claim, so there is a reasonable inference the envelope was physically delivered. True, there are other scenarios explaining why the 2012—and not the 2013—claim was paid. And while one scenario gives the court jurisdiction, others don't. But we shouldn't be picking among them at this stage. *See Adams*, 697 F.2d at 1219.

Instead, we must draw all reasonable inferences in the light most favorable to Pond. After doing so, we find that Pond plausibly alleged in his complaint that his 2013 claim was physically delivered to the IRS before the statutory deadline. That is enough to show that the district court has jurisdiction within the United States's sovereign-immunity waiver

20

under § 1364(a) to hear his claim.  So Pond's complaint should not have been dismissed under Rule 12(b)(1).

*          *          *

Pond plausibly alleges that his claim for a refund on his 2013 taxes was physically delivered to the IRS before the statutory deadline.  If true, then Pond's suit falls within the United States's sovereign-immunity waiver, and the district court has jurisdiction.  The district court's order holding otherwise is thus vacated.  But Pond cannot rely on a presumption of delivery.  Section 7502 is clear:  only registered and certified mail are presumed delivered.  And because the statute "speaks directly" to that presumption, it displaces the common-law presumption that might otherwise help Pond.  Pond could have mailed his 2013 claim by registered or certified mail and been protected by the statutory presumption.  He chose not to, so he must show physical delivery on remand.  Accordingly, the district court's order is

*AFFIRMED IN PART;*
*VACATED IN PART;*
*AND REMANDED.*